313 Ga. 811
FINAL COPY

S21G1147.  GENERAL MOTORS, LLC v. BUCHANAN et al.

BETHEL, Justice.

In a civil lawsuit in Georgia, the discovery process allows litigants to gather information about a case from other litigants and third parties in an orderly and defined manner. Georgia, like most states, also provides various mechanisms for litigants and third parties to seek relief from the demands of discovery. One such method is by moving for a protective order under OCGA § 9-11-26 (c), which provides that upon a showing of "good cause," a trial court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including limiting or otherwise prohibiting the requested discovery.

In this wrongful death case in which the plaintiffs allege a faulty vehicle component caused the deadly accident, the plaintiffs

have sought to depose the Chief Executive Officer of General Motors, LLC, and General Motors has sought a protective order barring that deposition. General Motors urges us to adopt the so-called "apex doctrine," or some variation thereof, as a means of determining whether "good cause" exists for granting the protective order it seeks. That doctrine provides courts with a framework for determining whether good cause exists to forbid or limit the deposition of a high-ranking corporate executive[1] who lacks personal, unique knowledge of facts relevant to the litigation. We granted General Motors' petition for a writ of certiorari to consider "what factors should be considered by a trial court in ruling on a

---

[1] The apex doctrine can also apply to high-level government officials. See, e.g., *Sourgoutsis v. United States Capitol Police*, 323 FRD 100, 114 (D. D.C. 2017) ("High[-]ranking government officials are generally not subject to depositions unless they have some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." (Citation, punctuation, and emphasis omitted.)); *K. C. R. v. County of Los Angeles*, No. CV 13-3806 PSG (SSx), 2014 WL 3434257, at *3-*5 (III) (B), (IV) (C.D. Cal. July 11, 2014) (same, and noting that the undersheriff qualified as a high-ranking government official); *Church of Scientology of Boston v. Internal Revenue Svc.*, 138 FRD 9, 12 (C) (D. Mass. 1990) ("In general, heads of agencies and other top government executives are normally not subject to depositions."). But because this case involves a high-ranking corporate executive, we use corporate terminology in our discussion of the doctrine in this opinion.

motion for a protective order under OCGA § 9-11-26 (c) that seeks to prevent the deposition of a high-ranking officer" and "the appropriate burden of proof as to those factors."

We conclude that, to the extent these factors are asserted by a party seeking a protective order, a trial court should consider whether the executive's high rank, the executive's lack of unique personal knowledge of relevant facts, and the availability of information from other sources demonstrate good cause for a protective order under OCGA § 9-11-26 (c). However, we decline to hold that a trial court must find that good cause is presumptively or conclusively established in each instance that a movant has demonstrated that an executive is "sufficiently high-ranking" and lacks unique personal knowledge of discoverable information not available through other means.

Additionally, while motions for a protective order relying on factors associated with the apex doctrine and any other basis argued to constitute good cause are entitled to consideration by the trial court, the burden of persuasion remains on the party seeking the

3

protective order. Applying that standard here, we conclude that the trial court did not fully consider all of the reasons asserted by General Motors as a basis for the protective order it sought in the motion. Thus, we vacate the judgment of the Court of Appeals affirming the trial court's order and remand this case with direction that the Court of Appeals vacate the trial court's order and remand the case for reconsideration consistent with this opinion.

1. *Background*

Robert Randall Buchanan's wife, Glenda Marie Buchanan, was killed in a single-vehicle accident in November 2014 while driving her 2007 Chevrolet Trailblazer, which was manufactured by General Motors Corporation, the predecessor to General Motors, LLC (collectively "GM"). Buchanan brought a wrongful death action against GM alleging that the fatal accident was caused by a defect in the "steering wheel angle sensor," a component of the car's electronic stability control system, and seeking compensatory and punitive damages.

As part of that suit, Buchanan noticed the deposition of GM's

current CEO, Mary Barra. Buchanan predicated his request on previous statements Barra made in testimony before Congress and other public statements she made about GM's commitment to safety, including the "Speak Up for Safety" program under which the Trailblazer steering system angle sensor was investigated by GM. At the conclusion of that investigation into the Trailblazer steering system, GM decided that no action would be taken.

GM responded to Buchanan's notice of deposition by moving for a protective order under OCGA § 9-11-26 (c), arguing that good cause existed to prohibit Barra's deposition because she had not been identified as a witness having relevant knowledge during discovery, did not have "personal, unique, or superior knowledge of information" relevant to the case, was not involved in the investigation of the alleged defect at issue, and did not have any knowledge relevant to the design of the steering wheel angle sensor for the car at issue in Buchanan's suit or the investigation into it. GM also argued that any knowledge Barra might have could be obtained through "other, less intrusive means." In support of its

motion, GM cited cases primarily from federal courts applying the framework for assessing good cause commonly known as the "apex doctrine."

GM supported its response with Barra's affidavit, in which she averred that she was "not personally involved with" and did not have "direct personal knowledge regarding[ ] every aspect of each vehicle that is or has been manufactured by GM." More specifically, Barra averred that she "was not involved in the design, development, or manufacture" of either the steering wheel angle sensor or the 2006 to 2009 Trailblazer, did not conduct any Speak Up for Safety program investigations, did not receive individual reports about each investigation conducted under the program, was not involved in any investigation of the steering wheel angle sensor, and did not have "any direct, unique, specialized, or superior knowledge about the design, manufacture, and marketing" of the steering wheel angle sensor, the 2007 Trailblazer, or any internal investigations or results from investigations into the same.

In response to GM's motion, Buchanan again pointed to Barra's

congressional testimony in relation to a different alleged defect across several vehicles in which she stated that she would work with GM's new vice president of global vehicle safety to quickly identify and resolve product-safety issues and that she would review all future death inquiries in GM vehicle crashes. Buchanan also pointed to Barra's public statements and general knowledge about GM's safety culture and efforts to eliminate safety issues. Buchanan further argued that, to the extent Barra lacked knowledge about the other subjects, her lack of knowledge itself was properly discoverable by deposition.

The trial court denied GM's motion for a protective order, rejecting GM's argument that the apex doctrine or any similar framework was a suitable guide to assessing good cause and noting Georgia's liberal discovery rules under the Civil Practice Act. However, although it plainly rejected the invitation to employ the apex doctrine framework, the trial court's order does not otherwise reflect that it actually considered whether GM's arguments as to apex doctrine factors constituted good cause for granting the motion

for protective order. The court's order further declared that "until such time as the court is satisfied by substantial evidence that bad faith or harassment motivates the discoveror's action, the court should not intervene to limit or prohibit the scope of pretrial discovery" and determined that GM had not shown good cause for the protective order it sought. The court further directed that the deposition of Barra take place in Detroit, Michigan and that it last no longer than three hours.

Following the grant of a certificate of immediate review, GM filed an application for interlocutory appeal, which the Court of Appeals granted. The Court of Appeals affirmed the trial court's denial of the motion for protective order and, like the trial court, rejected GM's request to apply the apex doctrine. See *General Motors, LLC v. Buchanan*, 359 Ga. App. 412, 417-418 (2) (858 SE2d 102) (2021). Noting that OCGA § 9-11-26 (b) (1) is broader than its federal counterpart, see Fed. R. Civ. Proc. 26 (b) (1), the Court of Appeals concluded that the parties could "obtain discovery regarding any matter, not privileged, which is relevant to the subject

8

matter involved," but that a trial court may prohibit, or impose limitations on, discovery requests under OCGA § 9-11-26 (c). *Buchanan*, 359 Ga. App. at 414. The Court of Appeals reasoned that the trial court could consider whether Barra had unique personal knowledge of properly discoverable facts and whether those facts could be discovered by other, less burdensome means as among the myriad considerations, but that it was not required to do so. See id. at 415 (1). The Court of Appeals held that there was evidence to support the trial court's conclusion that GM did not meet its burden of showing good cause because its only argument was that Barra should not be deposed because she was a high-ranking executive without unique knowledge. See id. at 416-417 (1).

We granted GM's petition for a writ of certiorari and posed the questions noted at the outset of this opinion.

2. *Analysis*

(a) *The scope of discovery in Georgia*

The scope of discovery under the Civil Practice Act is broad. See *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206,

9

210 (2) (538 SE2d 441) (2000) ("[T]he discovery procedure is to be construed liberally in favor of supplying a party with the facts."). OCGA § 9-11-26 (b) (1) provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . .

Trial courts "should and ordinarily do interpret 'relevant' very broadly" so as to "remove the potential for secrecy" and to "reduce the element of surprise at trial." (Citations and punctuation omitted.) *Bowden v. The Medical Center, Inc.*, 297 Ga. 285, 291-292 (2) (a) (773 SE2d 692) (2015). Moreover, "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (Punctuation omitted.) Id. at 290 (2) (a).

However, trial courts may limit discovery in multiple ways, including for "good cause shown" under OCGA § 9-11-26 (c). More specifically, OCGA § 9-11-26 (c) provides:

10

Upon motion by a party or by the person from whom discovery is sought and for good cause shown, the court in which the action is pending or, alternatively, on matters relating to a deposition, the court in a county where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

The trial court has "wide discretion in the entering of orders . . . preventing the . . . taking of depositions [under OCGA § 9-11-26 (c)]." (Citation and punctuation omitted.) *Hampton Island Founders, LLC v. Liberty Capital, LLC*, 283 Ga. 289, 296 (4) (658 SE2d 619) (2008). And "[t]his court has repeatedly held that it will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion." *Ambassador College v. Goetzke*, 244 Ga. 322, 323 (1) (260 SE2d 27) (1979); see also *Alexander Properties Group, Inc. v. Doe*, 280 Ga. 306, 307 (1) (626 SE2d 497) (2006) ("The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court, and the exercise of that discretion is reviewed on appeal for abuse." (citation omitted)).

In exercising its discretion under OCGA § 9-11-26 (c), the court

can order, among other things, that discovery not be had, allow it "only on specified terms and conditions, including a designation of the time or place," change the method of discovery, seal a deposition, restrict disclosure of trade secrets and other sensitive commercial information, or require that the discovery be filed under seal. See OCGA § 9-11-26 (c) (1)-(8). The movant bears the burden of showing her entitlement to a protective order under this rule. See OCGA § 9-11-26 (c) (authorizing issuance of protective orders "[u]pon motion by a party . . . and for good cause shown"). See also *Hill, Kertscher & Wharton, LLP v. Moody*, 308 Ga. 74, 80 (2) (839 SE2d 535) (2020) ("Plaintiffs bore the burden of showing their entitlement to a protective order."). To meet this burden, the movant must establish good cause for the issuance of a protective order. See OCGA § 9-11-26 (c); *Moody*, 308 Ga. at 80 (2). The rule does not specify or limit the grounds a party may assert as good cause for a protective order.

 (b) *The "apex doctrine"*

GM and several amici curiae argue that, in determining whether good cause exists for the issuance of a protective order of a

12

high-ranking corporate executive under OCGA § 9-11-26 (c), a court should employ the framework of the apex doctrine. But before we can address whether a court should consider the apex doctrine in assessing good cause for a protective order under OCGA § 9-11-26 (c), we first review the factors typically associated with the apex doctrine and the burden associated with seeking such an order.

(i) *Apex doctrine factors*

GM and several amici point to the considerable body of jurisprudence addressing the circumstances in which it is appropriate to depose corporate executives and many cases from other jurisdictions — primarily federal district courts — purporting to apply some iteration of the apex doctrine.[2] Though the case law is

---

[2] It bears noting that many jurisdictions have rejected or opted not to adopt the apex doctrine, including the only federal appellate court to address the doctrine by name. See, e.g., *Serrano v. Cintas Corp.*, 699 F3d 884, 901-902 (II) (C) (3) (6th Cir. 2012) (holding instead that to justify a protective order under Federal Rule 26 (c), one of the enumerated harms "must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" (citation and punctuation omitted)); *BlueMountain Credit Alt. Master Fund L.P. v. Regal Entertainment Group*, 465 P3d 122, 131-132 (37)-(41) (Colo. 2020) (concluding that the apex doctrine "is inconsistent with Colorado law"); *Bradshaw v. Maiden*, No. 14 CVS 14445, 2017 WL 1238823, at *4 (II) (N.C. Super. Ct. Mar. 31, 2017) (holding that

not always uniform in its application of the apex doctrine, GM argues that the case law reflects a consensus as to the following four factors it suggests a trial court should generally consider when determining whether good cause exists for granting a protective order against a deposition of a high-ranking corporate executive: (1) whether the deponent is a sufficiently high-ranking executive considering her role and responsibilities in the organization; (2) the extent to which the facts sought to be discovered in the deposition are properly discoverable; (3) whether the executive has unique personal knowledge of relevant facts; and (4) whether there are alternative means, including written discovery or depositions of other witnesses (including a deposition of an organizational

---

"adoption of the apex doctrine is not necessary and that [North Carolina] Rule 26 is entirely adequate" to resolve the dispute over the deposition); *Netscout Systems, Inc. v. Gartner, Inc.*, No. (FS1) TCV146022988S, 2016 WL 5339454, at \*6 (Conn. Super. Ct. Aug. 22, 2016) (holding that the apex doctrine was incompatible with Connecticut law to the extent that it shifted the burden of showing good cause); *Crest Infiniti, II, LP v. Swinton*, 174 P3d 996, 1004 (17) (Okla. 2007) ("We decline to adopt a form of the apex doctrine that shifts a burden to the party seeking discovery. In Oklahoma, the burden of showing 'good cause' is statutorily placed on the party objecting to discovery and is part of that party's motion for a protective order."); *State ex rel. Ford Motor Co. v. Messina*, 71 SW3d 602, 607 (II) (Mo. 2002) ("This Court declines to adopt an 'apex' rule.").

representative pursuant to OCGA § 9-11-30 (b) (6)) by which the same facts could be discovered. We focus here on these factors most commonly associated with the apex doctrine, as argued by GM and explained in more detail below.

In the corporate context, the apex doctrine generally is intended to apply only to "high-level" executives. See *Minter v. Wells Fargo Bank, N.A.*, 258 FRD 118, 126 (I) (A) (D. Md. 2009) ("[T]he apex deposition rule is intended to protect busy, high-level executives."). Whether an executive is considered sufficiently "high-ranking" in a particular organization such that the doctrine should apply to her is less clear, however. Some jurisdictions have attempted to provide some sort of guidance in making this determination. See, e.g., *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 FRD 259, 263 (III) (N.D. Cal. 2012) ("In order that the 'apex' designation as applied to multiple executives does not itself become a tool for evading otherwise relevant and permissible discovery, the court must assess . . . — with apologies — the person's degree of 'apex-ness' in relation to [the other] factors."); see also *Estate of*

*Levingston v. County of Kern*, 320 FRD 520, 526 (V) (A) (E.D. Cal. 2017) (considering how highly official is ranked in the county); *K. C. R. v. County of Los Angeles*, No. CV 13-3806 PSG (SSx), 2014 WL 3434257, at *6 (IV) (C.D. Cal. July 11, 2014) (considering hierarchical structure of department, official's key role in setting and enforcing policies and practices, and "significant risk" of being "called to testify in innumerable suits" in concluding that official was sufficiently high-ranking); *Alexander v. Fed. Bureau of Investigation*, 186 FRD 1, 3-4 (II) (A) (D. D.C. 1998) (evaluating seniority and level of compensation in determining if official was sufficiently high-ranking). Further, as one court described this doctrine,

> [o]n the proverbial sliding scale, the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become.

*Apple Inc.*, 282 FRD at 263 (III).

"The rationale for barring such depositions is that high level

16

executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." (Citation and punctuation omitted.) *In re Mentor Corp. Obtape Transobturator Sling Products Liability Litigation*, No. 4:08-MD-2004(CDL), 2009 WL 4730321, *1 (M.D. Ga. Dec. 1, 2009); see also *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 205 FRD 535, 536 (S.D. Ind. 2002). These cases establish that the apex doctrine "is aimed to prevent the high level official deposition that is sought simply because [s]he is the CEO or agency head — the top official, not because of any special knowledge of, or involvement in, the matter in dispute." *Minter*, 258 FRD at 126 (I) (A).

Other courts have also determined that, in order for the deposition of a high-ranking executive to move forward, that person must have some knowledge of facts that are properly discoverable — that is, facts that are relevant to the litigation. See, e.g., *Simms v. Nat. Football League*, No. 3:11-CV-0248-M-BK, 2013 WL 9792709, at *3 (N.D. Tex. July 10, 2013); *Alliance Indus., Inc. v. Longyear*

*Holding, Inc.*, No. 08CV490S, 2010 WL 4323071, \*4 (III) (A) (W.D. N.Y. Mar. 19, 2010). And, as applied by a number of federal district courts, this knowledge must be personal and unique or superior to that of other persons from the organization who might be deposed in the litigation. See, e.g., *Thomas v. Intl. Bus. Machines*, 48 F3d 478, 483 (II) (A) (10th Cir. 1995) (affirming district court's grant of protective order prohibiting deposition of chairman of defendant's board of directors where chairman had no personal knowledge of plaintiff's claim and other employees had direct knowledge); *Chick-Fil-A, Inc. v. CFT Dev., LLC*, No. 5:07-cv-501-Oc-10GRJ, 2009 WL 928226, \*3 (II) (M.D. Fla. Apr. 3, 2009) (denying motion to compel deposition of president where moving party failed to convince the court that he possessed any "unique or superior knowledge concerning any information which is relevant and material to the issues in this case" or that the defendants had "been unable to obtain full and complete discovery" from the other company representatives already deposed in the case); *Burns v. Bank of America*, No. 03 Civ. 1685 RMB JCF, 2007 WL 1589437, \*3 (S.D.

18

N.Y. June 4, 2007) (holding that "[u]nless it can be demonstrated that a corporate official has 'some unique knowledge' of the issues in the case, 'it may be appropriate to preclude a deposition of a highly-placed executive' while allowing other witnesses with the same knowledge to be questioned").

Further, courts should consider whether the high-ranking executive's "unique or superior knowledge" is available through other means. See *Cuyler v. Kroger Co.*, No.1:14-CV-1287-WBH-AJB, 2014 WL 12547267, *6 (B) (N.D. Ga. Oct. 3, 2014); see also *Brown v. Branch Banking and Trust Co.*, No. 13-81192-CIV, 2014 WL 235455, *3 (S.D. Fla. Jan. 22, 2014) (plaintiffs must show that "no less intrusive means (such as serving interrogatories, deposing a Rule 30 (b) (6) corporate representative and/or lower level employees) exist"). Exhaustion of less intrusive means of discovery is not necessarily "an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion." (Citation and punctuation omitted.) *Reilly v. Chipotle Mexican Grill,*

*Inc.*, No. 15-Civ-23425-COOKE/TORRES, 2016 WL 10644064, *7 (II) (B) (2) (c) (S.D. Fla. Sept. 26, 2016). See also *In re Transpacific Passenger Air Transp. Antitrust Litigation*, No. C-07-05634 CRB (DMR), 2014 WL 939287, at *5 (III) (N.D. Cal. Mar. 6, 2014) (noting that exhaustion of other discovery routes is an "important consideration" but not a necessary precondition to the taking of an apex deposition).

(ii) *The parties' respective burdens under the apex doctrine*

When it comes to determining who bears the burden to prove or defeat a protective order under the apex doctrine, federal courts have adopted varying approaches. In some courts, application of the doctrine results in shifting the burden of proof to the party requesting the discovery. See, e.g., *Degenhart v. Arthur State Bank*, No. CV411-041, 2011 WL 3651312, *1 (S.D. Ga. Aug. 8, 2011) ("As the party seeking to compel the deposition of a high-ranking executive, the deposing party has the burden of showing that the target's deposition is necessary." (citation and punctuation omitted)); *Hickey v. North Broward Hosp. Dist.*, No. 14-CV-60542,

2014 WL 7495780, *2 (A) (S.D. Fla. Dec. 17, 2014) (same); *Performance Sales & Marketing LLC v. Lowe's Companies, Inc.*, No. 5:07-CV-00140-RLV, 2012 WL 4061680, at *4 (II) (C) (W.D.N.C. Sept. 14, 2012) ("[T]he apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26 (b) (2) (C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26 (c) (1).").

In other federal courts, however, the party seeking relief from discovery bears the burden of establishing that good cause exists for a protective order through application of the apex factors. See, e.g., *Dyson, Inc. v. SharkNinja Operating LLC*, No. 1:14-cv-0779, 2016 WL 1613489, *1 (II) (A) (N.D. Ill. Apr. 22, 2016) ("Plaintiffs['] contention that Defendants bear the burden of proving that their discovery is appropriate misstates and inverts the burden of proof in this case. The burden under the apex principle is supplied by the general rule [that] a party that seeks to avoid discovery in general

bears the burden of showing that good cause exists to prevent the discovery." (citation and punctuation omitted)); *Scott v. Chipotle Mexican Grill, Inc.*, 306 FRD 120, 122 (I) (S.D. N.Y. 2015) (stating that even in apex doctrine scenarios, the plaintiff bears no burden to show that the deponent has special knowledge).

Finally, other federal courts have developed a hybrid, burden-shifting version of the doctrine. See, e.g., *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-cv-01528-REB-KLM, 2011 WL 2535067, at *2 (D. Colo. June 27, 2011) (party seeking to depose an executive "bears an initial burden of making some showing that the executive has 'unique personal knowledge' of some relevant issues," and then "the burden shifts to the executive to demonstrate by evidence that he in fact has no personal knowledge or that there exists one of the other three circumstances under which requiring him to sit for a deposition is inappropriate," though "the ultimate burden of persuasion lies with the executive invoking the apex doctrine"); *Alliance Indus., Inc.*, 2010 WL 4323071, at *4 (III) (noting that the party seeking discovery must first establish the relevance of the

22

material sought from the executive, and once that burden has been met, it then shifts to the party opposing disclosure to show good cause for not producing its executive); *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 FRD 694, 697-698 (II) (D. N.M. 2019) (applying this same burden-shifting test). Thus, federal courts that recognize some version of the apex doctrine are split on which party bears the ultimate burden.

(c) *Consideration of apex doctrine factors under Georgia law and the associated burden as to those factors*

GM argues that federal cases interpreting Federal Rule 26 and applying apex doctrine factors should be considered by Georgia courts as persuasive authority in evaluating whether good cause for a protective order exists. However, the text of Federal Rule 26 shows that the scope of discovery is narrower than that contemplated by OCGA § 9-11-26 (b). Compare Fed. R. Civ. P. 26 (b) (1) (providing that parties may obtain discovery on matters that are "relevant to any party's claim . . . and proportional to the needs of the case, considering [a number of factors, including] whether the burden or

23

expense of the proposed discovery outweighs its likely benefit") with OCGA § 9-11-26 (b) (1) (providing that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action"); see also *City of Huntington v. AmerisourceBergen Drug Corp.*, Nos. 3:17-01362, 3:17-01665, 2020 WL 3520314, at *2 (III) (S.D. W.V. June 29, 2020) (noting the proportionality standard in the federal rule, which considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"); *Bowden*, 297 Ga. at 291 n.5 (noting that, unlike OCGA § 9-11-26, Federal Rule 26 has had "several amendments to narrow the scope of discovery"). Moreover, the text of OCGA § 9-11-26 (c) makes it clear that the movant bears the burden of establishing that a protective order is necessary. See OCGA § 9-11-26 (c); *Moody*, 308 Ga. at 80 (2). Thus, to the extent federal courts have interpreted Federal Rule 26, those

interpretations are relevant to Georgia only insofar as they comport with the text of our analogous rule. More specifically, to the extent that federal courts interpret the apex doctrine as establishing a burden-shifting scheme or a rebuttable presumption that the deposition of a high-ranking corporate executive violates Federal Rule 26 (b) (2) (C)'s proportionality standard, no such equivalent consideration exists under Georgia's Rule 26 (c). And although we acknowledge as a general principle that we look to federal case law interpreting the Federal Rules of Civil Procedure as persuasive authority, see *Bowden*, 297 Ga. at 291 n.5, where the language of a Georgia statute deviates from the federal rules, the persuasive value of the authority interpreting and applying the federal rules is diminished. See, e.g., *Blanton v. Blanton*, 259 Ga. 622, 623 (1) (385 SE2d 672) (1989) (noting textual differences between Federal Rule 45 and OCGA § 9-11-45 pertaining to subpoenas and declining to follow the federal approach). Accordingly, we decline to adopt any version of the apex doctrine that shifts the burden to the party seeking discovery.

Instead, courts applying Georgia law should rely on the overarching dictates of OCGA § 9-11-26 (c) in determining whether to grant a protective order. Under that statutory provision, to justify a protective order, one or more of the statutorily enumerated harms must be established through a specific demonstration of fact, as opposed to stereotyped and conclusory statements about, for example, the position in the corporate hierarchy held by the prospective deponent or the size and complexity of the organization. See *Caldwell v. Church*, 341 Ga. App. 852, 861 (4) (802 SE2d 835) (2017) ("[M]ere conclusory statements, bereft of facts[,] will not support the imposition of limitations on civil discovery." (citation and punctuation omitted)); *Young v. Jones*, 149 Ga. App. 819, 824 (4) (256 SE2d 58) (1979) ("Good cause for the issuance of a protective order designed to frustrate discovery . . . necessarily is not established by stereotyped or conclusional statements, bereft of facts."). And as the Court of Appeals rightly noted, "'[w]hat constitutes "good cause" must be left largely to the trial judge who has a latitude of discretion in determining whether the showing has

been made.'" *Buchanan*, 359 Ga. App. at 417 (1) (quoting *Harris v. Tenet Healthsystem Spalding, Inc.*, 322 Ga. App. 894, 901 (3) (746 SE2d 618) (2013)). Adopting the apex doctrine would necessarily restrict the trial court's discretion by placing a thumb on the scale so as to suggest a special rule for high-ranking executives of large companies that exists nowhere in the Civil Practice Act, and would contravene the principle of broadly available discovery under Georgia law. See *Tenet Healthcare Corp.*, 273 Ga. at 210; OCGA § 9-11-26 (b) (1).[3]

Moreover, we reject GM's assertion that leaving the determination of good cause to a trial court's discretion will result in inconsistent outcomes that will make meaningful appellate review

[3] The holding of the United States Court of Appeals for the Fifth Circuit in *Salter v. Upjohn Co.*, 593 F2d 649 (5th Cir. 1979) does not support a different result. In *Salter*, the Fifth Circuit recognized the trial court's "broad discretion" in controlling the timing of discovery when it affirmed the trial court's issuance of a protective order requiring the discovering party to depose employees with the most direct knowledge of relevant facts. See id. at 651. However, the court did not formalize the application of the underlying principles of the apex doctrine into a generally applicable doctrine or rule, and indeed noted that "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." Id.

difficult, if not impossible. Trial courts are regularly called upon to exercise their discretion in considering whether good cause exists in other circumstances, and appellate courts are able to review the reasonableness of those decisions under the specific circumstances of the case based upon the evidence and arguments presented to the trial court.[4] There is no reason that the same cannot be true here. For these reasons, we see no need to employ a special test or

---

[4] See, e.g., *Moody*, 308 Ga. at 80 (2) (upholding trial court's finding that plaintiffs did not establish good cause entitling them to a protective order because, among other things, the finding was supported by discovery responses); *DeVaughn v. State*, 296 Ga. 475, 478 (3) (769 SE2d 70) (2015) (trial court "did not abuse its discretion in ruling that the State had established good cause for allowing an exception to the ten-day rule" in OCGA § 17-16-8 (a) that requires disclosure of a witness at least ten days before trial where, after substantial efforts to find the witness, the State "was able to identify and speak with [him] for the first time as the jury was being selected"); *Harris v. State*, 278 Ga. 596, 597 (1) (604 SE2d 788) (2004) (based on facts in the record, trial court did not abuse its discretion in determining that good cause existed to seat alternate juror under OCGA § 15-12-172); *Yates v. State*, 274 Ga. 312, 315 (2) (553 SE2d 563) (2001) (reversing and noting, among other things, that while a trial court has "broad discretion" in determining whether good cause exists to excuse a juror for service, "that discretion is abused when the trial court fails to make any inquiry into whether the proffered excuse constitutes 'good cause'" under OCGA § 15-12-1 (a)); *Crider v. Sneider*, 243 Ga. 642, 645-646 (1) (256 SE2d 335) (1979) (no abuse of discretion where the trial court, in determining whether good cause had been shown for a mental and physical examination of the defendant under predecessor to OCGA § 9-11-35, considered whether the facts and circumstances of the collision could be established by other sources of evidence).

framework different than that which generally applies to any claim of good cause made in support of a motion for protective order under OCGA § 9-11-26 (c).

Despite many federal cases it cites holding otherwise, GM concedes that, as the party seeking a protective order in this case, it has the initial burden of establishing good cause for such relief. However, it argues that this burden is met when it shows that the deponent is a high-ranking executive, that she has no unique personal knowledge that is properly discoverable, and that the discoverable information is available through other means — essentially, when it demonstrates that it has satisfied apex doctrine factors. But GM's view effectively builds in a presumption of good cause in favor of protection from discovery once apex doctrine factors are established. And, as noted above, the text of OCGA § 9-11-26 (c) places the burden on the party seeking protection from discovery to establish good cause. GM's formulation would impermissibly shift that burden to the party seeking discovery.

Accordingly, when factors commonly associated with the apex

29

doctrine are raised and adequately shown by a party seeking a protective order, a court should consider those factors — as well as any other factors raised — and decisions applying those factors in determining whether the party seeking relief has shown good cause for a protective order under OCGA § 9-11-26 (c). That is, a court must consider whether the deposition of a particular individual would cause "annoyance, embarrassment, oppression, or undue burden or expense" based on, for example, that person's scheduling demands or responsibilities and lack of relevant or unique personal knowledge that is not available from other sources. OCGA § 9-11-26 (c).

Such consideration is not solely a product of the relative organizational "importance" of a prospective deponent. Rather, courts should consider on a case-by-case basis whether the evidence demonstrates good cause such as an undue burden or expense. High-ranking corporate executives are not immune from discovery and are not automatically given special treatment excusing them from being deposed simply by virtue of the positions they hold or the size

of the organizations they lead.[5] And large multinational companies are subject to the same Georgia discovery rules as smaller ones. With respect to the discovery rules, we have said that "[t]he availability of one form of proof does not make other forms of proof irrelevant[.]" *Bowden*, 297 Ga. at 296 (2) (b). Thus, discovery is not usually limited to "unique" knowledge. Very often, discovery is sought to uncover what witnesses do or do not know and to reveal inconsistencies between witnesses. See, e.g., *Flower v. T.R.A. Indus.*,

---

[5] It is not high rank alone that warrants consideration for good cause, but rather the significant responsibilities — and thus the burden on the executive imposed by the distraction of a deposition — that generally accompany that rank. Of course, significant responsibilities and the accompanying burden of disruption are not limited to high-ranking corporate executives. For example, a single parent who works full-time outside the home, an individual who runs the whole "back office" or who serves as the sole outside sales presence of a small business, or an administrator who supervises the person who actually handled the records at issue in a case also might be able to claim that their situation warrants a finding that they would be unnecessarily burdened by being compelled to participate in a deposition, especially if they lack unique personal knowledge of relevant information readily available from another source. But they, like the CEO, would need to demonstrate the actual facts of their circumstances to support a finding of good cause for a protective order. Moreover, it is not mere "busyness" that warrants a protective order. We live in a busy world. Rather, as required by the text of the rule, a protective order under OCGA § 9-11-26 (c) is warranted only where the movant demonstrates to the trial court that the sitting for a deposition would result in "annoyance, embarrassment, oppression, or undue burden or expense."

*Inc.*, 111 P3d 1192, 1206 (Wash. App. 2005) ("[C]laimed lack of knowledge does not provide sufficient grounds for a protective order [as] the other side is allowed to test this claim by deposing the witness."); *Kuwait Airways Corp. v. American Security Bank, N.A.*, No. 86-2542, 1987 WL 11994, at *2 (D. D.C. May 26, 1987) ("The reason why [the Chairman's] alleged lack of knowledge is not a sufficient ground to prevent a deposition is obvious. The very purpose of the deposition discovery is to test the extent of the deponent's knowledge and claims of ignorance."); *Travelers Rental Co. v. Ford Motor Co.*, 116 FRD 140, 143 (D. Mass. 1987) ("The plaintiff is entitled to 'test' the claim of lack of knowledge or lack of recollection by deposing the witness.").

Thus, a court considering whether factors commonly associated with the apex doctrine should limit or bar a plaintiff from deposing a high-ranking executive need not interpret the factors as a firmly established basis for an order prohibiting an executive's deposition. It is possible for a court to act within its discretion to conclude, based on the facts of the case before it, that a protective order prohibiting

the deposition of an executive need not be issued even where the executive is high-ranking, has no unique personal knowledge, and the discoverable information is available through other means. Likewise, the absence of factors commonly associated with the apex doctrine does not mean that a protective order for a high-ranking official's deposition cannot be granted if other factors presented show good cause for such a conclusion. In making these determinations, courts must balance the interests of the parties in securing permissible discovery with the clear directive of OCGA § 9-11-26 (c) to protect against "annoyance, embarrassment, oppression, or undue burden or expense," as this determination is directed to be made in the interest of "justice," which must include consideration of all concerned parties. Further, when a protective order is denied "in whole or in part, the court may, on such terms and conditions as are just," regulate the terms and conditions for discovery and can otherwise control the sequence and timing of discovery. OCGA § 9-11-26 (c), (d).

Finally, GM and several amici raise policy concerns about

inefficiencies in discovery involving corporate defendants absent mandatory application of the apex doctrine, like the collective impact of discovery on corporate executives (such as an overwhelming influx of deposition requests that will expose them to harassment and abusive, unduly burdensome discovery practices that will prevent them from fulfilling their professional duties), the potential for abuse by plaintiff's counsel, and the creation of a double-standard between Georgia's state and federal courts. But these policy concerns are properly addressed not by this Court but by petitioning the General Assembly and advocating for a change in the law. See *McEntyre v. Sam's East, Inc.*, 313 Ga. 429, 432-433 (2) (a) (870 SE2d 385) (2022) ("[I]t is not for this Court to expand or contract the scope of the General Assembly's legislative enactments, unless the policy choices it makes by enacting statutes exceed its constitutional authority.").

(d) *The trial court's order*

Turning to the application of these principles to this case, GM asked the trial court to consider Barra's alleged lack of "unique or

superior knowledge of issues relevant to [the] case" and the allegation that Buchanan could obtain relevant information by other, less intrusive means (such as through the testimony of lower-level corporate agents or employees with personal knowledge about the alleged defects). GM also argued that the deposition was intended to harass Barra and GM.

The trial court's order reflects that it generally concluded that "there is no express or implied law in Georgia for the 'apex doctrine' or other framework that imposes presumptive hurdles to seeking discovery (or deposition testimony) from certain corporate individuals." This conclusion about the apex doctrine as presumptive or burden-shifting was correct, as we explained above. However, the court's order does not otherwise indicate that the court considered whether the substantive merits of GM's arguments constituted good cause for granting GM's motion for a protective order. As noted above, independent of the apex doctrine, the asserted factors are entitled to consideration as to whether they constitute "good cause" if established, whether in isolation or in

35

concert.

The trial court further concluded, relying on identical language in *Bullard v. Ewing*, 158 Ga. App. 287, 291 (279 SE2d 737) (1981), that "until such time as the court is satisfied by *substantial evidence* that *bad faith or harassment motivates the* discoveror's *action*, the court should not intervene to limit or prohibit the scope of pretrial discovery" and ruled that GM had not shown good cause for the protective order. (Emphasis in original.) However, OCGA § 9-11-26 (c) makes clear that a court's decision whether to issue a protective order is to be based on the effect the proposed discovery would have on the party from whom the discovery is sought, not the intent or motivations of the requesting party. See OCGA § 9-11-26 (c) (providing that a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). The trial court's apparent construction of this rule based on the language found in *Bullard* would require substantial evidence of bad faith or a purpose of harassment on the part of the party seeking discovery as a predicate to the issuance of

a protective order. That interpretation is incorrect and has no basis in the text of OCGA § 9-11-26 (c). For this reason, we overrule *Bullard* to the extent it held otherwise.[6]

Finally, we note that the Court of Appeals' opinion suggests that the trial court needed only to determine that the requested discovery was relevant and was not required to consider GM's arguments that apex doctrine factors constituted good cause for a

---

[6] *Bullard*, in turn, relied on *Bridges v. 20th Century Travel*, 149 Ga. App. 837, 838-839 (256 SE2d 102) (1979), and *Intl. Svc. Ins. Co. v. Bowen*, 130 Ga. App. 140, 144 (202 SE2d 540) (1973). These cases both quote language from *Travis Meat & Seafood Co., Inc. v. Ashworth*, 127 Ga. App. 284, 288 (193 SE2d 166) (1972), which cited *Stonybrook Tenants Assn., Inc. v. Alpert*, 29 FRD 165, 167 (D. Conn. 1961). In *Stonybrook*, the federal District Court for Connecticut, citing no authority, stated that "[u]ntil such time as the court is satisfied that bad faith or harassment motivates the movers' action, the court will not intervene to limit the scope of pre-trial discovery." Id. at 167. Similar language has appeared in other opinions from Georgia's Court of Appeals. See, e.g., *Caldwell*, 341 Ga. App. at 861 (4); *Ewing v. Ewing*, 333 Ga. App. 766, 768 (1) (777 SE2d 56) (2015); *Galbreath v. Braley*, 318 Ga. App. 111, 113 (733 SE2d 412) (2012); *McKesson HBOC, Inc. v. Adler*, 254 Ga. App. 500, 505 (3) (562 SE2d 809) (2002); *Parks v. Multimedia Technologies, Inc.*, 239 Ga. App. 282, 296 (6) (520 SE2d 517) (1999); *Clayton County Bd. of Tax Assessors v. Lake Spivey Golf Club, Inc.*, 207 Ga. App. 693, 695 (2) (428 SE2d 687) (1993); *DeLoitte Haskins & Sells v. Green*, 187 Ga. App. 376, 379 (2) (370 SE2d 194) (1988); *Osborne v. Bank of Delight*, 173 Ga. App. 322, 324 (2) (326 SE2d 523) (1985); *Armstrong v. Strand*, 167 Ga. App. 723, 724 (307 SE2d 528) (1983). These cases from Georgia's Court of Appeals are also disapproved to the extent they rely on such language, which has no basis in the text of OCGA § 9-11-26 (c).

protective order under OCGA § 9-11-26 (c). See *Buchanan*, 359 Ga. App. at 415 (1) (noting that "the court may consider a myriad of factors to determine whether GM showed good cause to protect Barra from annoyance, embarrassment, oppression, or undue burden or expense," but that it was not required to). But, as noted above, to the extent a party seeking a protective order argues that a proposed deponent should be protected "from annoyance, embarrassment, oppression, or undue burden or expense" based on apex doctrine (or any other) factors, a trial court must consider whether the movant's arguments (and evidence presented in support of such arguments) constitute good cause for protection from discovery under OCGA § 9-11-26 (c). The discretion conferred upon the trial court, while broad, requires the trial court to actually consider the evidence and arguments presented and exercise that discretion.

For these reasons, we vacate the judgment of the Court of Appeals and remand the case with direction to vacate the trial court's order and remand the case for reconsideration consistent

with this opinion.

*Judgment vacated and case remanded with direction. All the Justices concur, except Colvin, J., disqualified.*

Decided June 1, 2022.

Certiorari to the Court of Appeals of Georgia— 359 Ga. App. 412.

*Alston & Bird, Keith R. Blackwell, Cari K. Dawson, Jamie S. George; Holland & Knight, Laurie W. Daniel, Jonathan B. Spital; Swift Currie McGhee & Hiers, C. Bradford Marsh, Myrece R. Johnson; Lightfoot Franklin & White, Michael L. Bell, Rachel M. Lary, Christopher C. Yearout, Brian P. Kappel*, for appellant.

*The Cooper Firm, Lance A. Cooper, Patrick A. Dawson; The Summerville Firm, J. Darren Summerville, Anna G. Cross*, for appellees.

*Smith Gambrell & Russell, Leah Ward Sears, Edward H. Wasmuth, Jr.; Bryan Cave Leighton Paisner, William V. Custer, Christian J. Bromley; Eversheds Sutherland (US), Rocco E. Testani,*

*Lee A. Peifer; Nelson Mullins Riley & Scarborough, Richard B. North, Jr., Christopher S. Polston, Steven H. Campbell; Shook Hardy & Bacon, Anna S. Pieschel, Philip S. Goldberg; King & Spalding, Chilton D. Varner, Andrew T. Bayman, Paul A. Mezzina, Billie B. Pritchard; Christopher M. Carr, Attorney General; Stephen J. Petrany, Solicitor-General, Drew F. Waldbeser, Deputy Solicitor-General; Maynard Cooper & Gale, Alexander B. Feinberg, John C. Neiman, Jr., Mary K. Mangan; Charles H. Haake, David E. Bright; Mayer Brown, Nicole A. Saharsky, Minh Nguyen-Dang; Beasley Allen Crow Methvin Portis & Miles, Christopher D. Glover; Hasty Pope Davies, Jonathan A. Pope; Penn Law, Darren W. Penn, Kevin M. Ketner; Bey & Associates, N. John Bey; Watkins Lourie Roll & Chance, Stephen R. Chance; Forlines Law, Lindsay A. Forlines*, amici curiae.