## 62415. McBRYDE v. ROBERTS.

McMurray, Presiding Judge.

This is an action for damages arising from a collision of motor vehicles. Plaintiff was slowing prior to executing a right turn when her automobile was struck from the rear by defendant's dump truck. Plaintiff brought this action alleging negligence against the operator and owner of the dump truck, but later dismissed without prejudice the action against the operator, leaving as the only defendant the owner of the dump truck. Plaintiff's complaint alleged that as the proximate result of the negligence imputed to the remaining defendant she suffered severe and disabling injuries, permanent partial disability and great pain and suffering, both past and future. Plaintiff's complaint also alleged loss due to property damage to her automobile; but no evidence was introduced on this issue, and it was not submitted to the jury.

Upon the trial of the case the verdict was directed in favor of the plaintiff on the issue of negligence, the issues of proximate cause and damages were submitted to the jury which returned a verdict in favor of the defendant. Plaintiff's motion for new trial was filed and denied. Plaintiff appeals, contending that the evidence demanded a verdict in her favor and that the trial court erred in its charge to the jury. *Held:*

1. Issues of proximate cause are generally for the jury, and the court should not decide such issues except in plain, palpable and indisputable cases. *Collins v. McGlamory,* 152 Ga. App. 114 (262 SE2d 262). Plaintiff contends the case sub judice is an appropriate case for the court's determination that plaintiff's injuries were proximately caused by defendant's negligence in that the testimony of several physicians presented by plaintiff was "so cumulative" as to suggest gross mistake or undue bias of the jury in refusing to reach a verdict in favor of the plaintiff.

The testimony of four physicians who had examined and treated her at various times following the motor vehicle collision in question was introduced. Although the testimony of these physicians is not entirely consistent in regard both to the complaints made to them by the plaintiff and in their subjective findings as to her condition, the verdict of the jury does not necessarily suggest that the jury has failed to conclude that the plaintiff has indeed suffered various and somewhat serious physical maladies. In other words, even if plaintiff has established that she has suffered certain substantial physical injuries and even if the nature of these injuries is consistent with her assertion they were the result of a motor vehicle collision, the evidence does not require a conclusion that plaintiff's injuries were

proximately caused by defendant's negligence.

We must affirm the judgment of the trial court since the plaintiff has failed to carry the burden of showing by plain, palpable and indisputable evidence that the injuries to plaintiff were caused by the negligence imputed to the defendant. The plaintiff's only evidence of the essential causal link which would establish the element of proximate cause in the case sub judice is her own testimony that the injuries with which she is burdened were caused by the collision with defendant's dump truck. However, due to the conflicts in plaintiff's evidence and the possible impeachment of the plaintiff by the proof of prior conflicting statements and by disproof of essential facts testified to by the plaintiff, the jury was authorized to disregard plaintiff's testimony. Furthermore, while we are reluctant to speculate as to what inference was drawn from the evidence by the jury, we must note that the evidence authorized conclusions other than those advocated by plaintiff.

The first physician who examined the plaintiff, Dr. Goldin, testified that the plaintiff came to him in the emergency room on August 8, 1977 (the fourth day following the date of the collision which occurred on August 4, 1977). This contradicted the plaintiff's testimony that she had seen Dr. Goldin on the day of the collision. Dr. Goldin testified that the plaintiff complained to him of "pain in the front of her chest." X-rays revealed no fractures and examination revealed no contusions (bruises) or swelling. Again, this contradicted the plaintiff's testimony that when she was examined by Dr. Goldin "[m]y hip was black, and I had black places on my arm. My arm was black, and my hip was black, when I was at the hospital and when I left. Q. And this was just within an hour or two or three hours after the accident happened; and you already had black and blue bruises? A. I sure did. Q. Didn't it take longer than that before the bruises showed up black and blue? A. Well it didn't, because they were there." Dr. Goldin testified that a bruise takes two or three days "to really get it good and black and blue." These discrepancies between the testimony of the plaintiff and Dr. Goldin leave open several hypotheses other than the one advocated by plaintiff, depending upon which testimony was accepted by the jury as to the date and the presence or absence of bruises upon plaintiff. In any case, Dr. Goldin found only some tenderness in plaintiff's chest for which he gave her a prescription for pain.

The next physician who saw the plaintiff on August 10, 1977, was Dr. Betz who testified that plaintiff complained of stiffness of the neck. Dr. Betz found "some slight tenderness in the right sternocleidomastoid muscle, which is the muscle going from the right posterior jaw [the jaw area near the ear] down to the sternum bone."

Dr. Betz examined the chest and back area and found this portion of the examination to be entirely normal except for some mild tenderness in the lower rib area on each side in the mid-back area. Dr. Betz' overall assessment was multiple contusions (bruises) in the areas mentioned above and he gave plaintiff a prescription for valium as a muscle relaxer.

Plaintiff saw Dr. Smith 2 1/2 to 3 weeks after the date of the collision, at which time she was complaining of pain in the neck, left arm, left chest wall and left foot. On examination Dr. Smith found that the plaintiff's neck was tender and her left arm was discolored and her left chest tender and the left hip region discolored. After seeing plaintiff several times Dr. Smith referred plaintiff to Dr. Kelley.

The plaintiff was next seen by Dr. Kelley, an orthopedic surgeon on October 31, 1977, at which time she complained of pain in her left hip and left upper arm. X-rays at this time revealed no fracture or dislocations and a neurological examination of plaintiff's extremities in the areas covered by the neck and low back was normal. Dr. Kelley diagnosed multiple muscular contusions (bruises) of the muscles and strain of the ligaments in the neck and low back and prescribed physical therapy. She was examined again on November 22, 1977, and found to be improving under the treatment by physical therapy. She was seen again by Dr. Kelley on February 28, 1978, at which time plaintiff stated that her neck, low back and legs did not bother her anymore, but she continued to complain of pain in her left shoulder. Further x-rays revealed no abnormalities and plaintiff was dismissed with 10% permanent disability to the left upper extremity, but Dr. Kelley testified that he believed the continuing difficulty with the left shoulder was caused by scarring of the muscle in the left shoulder and that condition was consistent with the history plaintiff had given of being involved in an automobile collision.

The jurors were also called upon to determine the weight to be placed on the testimony of the state trooper who investigated the motor vehicle collision. He testified that upon arriving at an accident scene the first concern is the people involved as opposed to the vehicles. When he arrived at the scene plaintiff was there and did not ask for any medical attention or ask for an ambulance.

As to the possible impeachment of the plaintiff by the proof of prior contradictory statements, other evidence disclosed that on December 2, 1977, plaintiff was involved in a subsequent automobile collision. At trial she testified, in response to an inquiry as to whether she had injured the left side of her chest wall in the second collision, that the only injury she had received in the second incident was a cut on her face. Defense counsel was permitted to attempt to impeach the

plaintiff by inquiring as to plaintiff's answer to an interrogatory in which she stated she had injured her left chest wall in the second collision. This incident, as well as the evidence, which if accepted by the jury would disprove the facts testified to by plaintiff and authorize the trial court's charge to the jury on impeachment. Code §§ 38-1802, 38-1803. *Hughes v. Newell,* 152 Ga. App. 618, 622 (2) (263 SE2d 505); *Atlantic C. L. R. Co. v. Hodges,* 90 Ga. App. 870, 871 (2) (84 SE2d 711).

If the jury determined that the plaintiff's testimony had been sufficiently contradicted as to a material matter her credit as to other matters was for determination by the jury. In the case sub judice the jury was authorized to determine that plaintiff had been sufficiently contradicted so as to authorize the jury to disregard plaintiff's testimony. Furthermore, as stated above, the evidence supported alternative hypotheses as to the cause of plaintiff's injuries. For these reasons the evidence did not demand the finding that plaintiff had proven defendant's negligence was the proximate cause of her injuries. The issue of proximate cause was properly submitted to the jury.

2. Plaintiff also enumerates as error the repeated use by the trial court of the language "if any" in referring to damages sustained by plaintiff. Plaintiff contends that unnecessary and prejudicial emphasis was given to the question of whether the plaintiff had sustained any injuries due to the negligence of defendant. This enumeration of error is totally without merit as any emphasis, if the language in question would amount to such, was entirely proper as this issue was the primary issue remaining for determination by the jury in this case.

*Judgment affirmed. Quillian, C. J., and Pope, J., concur.*

DECIDED NOVEMBER 18, 1981.

*E. Lamar Gammage,* for appellant.
*J. Clinton Sumner, Jr., Raymon H. Cox,* for appellee.