A09A2041. ALLEN v. SPIKER.
A09A2042. STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY v. SPIKER.

(689 SE2d 326)

MIKELL, Judge.

Steven Spiker sued Samuel K. Allen to recover damages for injuries sustained in a rear-end collision. Spiker served his uninsured motorist carrier, State Farm Mutual Automobile Insurance Company, with a copy of the lawsuit. State Farm filed an answer in its own name but dismissed its answer before trial and entered an appearance in Allen's name, as permitted by OCGA § 33-7-11 (d). Allen admitted that he was at fault in the accident but contested the nature and extent of the injuries claimed by Spiker. The case proceeded to trial on damages. At the conclusion of the evidence, the trial court directed a verdict in favor of Spiker on his claim for medical expenses of $7,493. After deliberating for 23 minutes, the jury returned a verdict awarding Spiker $90,000 in general damages. Ultimately, the trial court entered judgment against Allen for $97,498. State Farm and Allen filed motions for new trial, arguing, inter alia, that the trial court erred in directing a verdict for Spiker on the issue of medical expenses incurred as a result of the collision. In denying the motions, the court ruled that because Allen admitted during discovery that Spiker had incurred $2,166 in medical bills and had not offered evidence at trial to rebut Spiker's evidence that his injuries were consistent with the impact of the collision, Spiker was entitled to a directed verdict on his claim for medical expenses. On appeal, Allen[1] challenges this ruling. We conclude that the trial court erred in directing a verdict and that the error was harmful because it tainted the jury's finding on general damages. Accordingly, we reverse the judgment.

1. "A directed verdict is authorized only where the evidence, with all reasonable deductions and construed in favor of the nonmovant, demands a particular verdict. OCGA § 9-11-50 (a). Where there is 'any evidence' or 'some evidence' to support the nonmovant's claims, a jury issue is created and a directed verdict is improper."[2] We conduct a de novo review on appeal from the grant of a directed verdict and will uphold it only if all of the evidence demands it.[3] Accordingly, in the case at bar, the issue is whether all

---

[1] State Farm and Allen filed separate notices of appeal, but we have consolidated the appeals for disposition in a single opinion.

[2] (Citation and punctuation omitted.) *Pryor v. Phillips*, 222 Ga. App. 116 (1) (473 SE2d 535) (1996).

[3] *Carden v. Burckhalter*, 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994).

894

of the evidence, construed most favorably to Allen, as the party opposing the motion, demanded a finding that all of Spiker's medical bills were caused by the collision.

The evidence shows that the collision occurred on April 11, 2005, on Victory Drive in Savannah. Allen was driving a 1990 Dodge van in heavy traffic. He dropped his cell phone and reached down to retrieve it, taking his eyes off the road. When Allen looked up, traffic had stopped, and he slammed on his brakes. Allen skidded ten to twelve feet, then struck the rear of Spiker's 2004 Dodge pickup truck, causing it to strike the car in front of him. The police arrived and conducted an investigation.

Afterward, Spiker drove his truck home to Pooler. He felt pain and stiffness in his neck and back but was unable to secure an appointment with a physician until April 19, 2005. The physician prescribed medication and physical therapy. Spiker testified that he completed therapy on May 31, 2005, but was not improving, so he returned to the physician on November 29, 2005. She recommended an MRI, and Spiker obtained one in Savannah in December. Spiker did not return to the physician in Savannah to have his MRI read because he moved to Texas and received treatment in Ft. Worth. Spiker testified that he received physical therapy and another MRI in Texas. Spiker testified that as a result of the injuries sustained in the wreck, he incurred a total of $7,493 in medical bills in Texas and Georgia and that he continues to suffer neck pain, back pain, numbness and tingling.

On cross-examination, Spiker admitted that he never took the medications the Savannah physician prescribed for him and that he did not see any medical professional between May 31, 2005, and November 29, 2005. Spiker testified that part of the reason was that it was the busy season for his HVAC business. Spiker testified that he had not been treated in Texas since April 2006. The case was tried in July 2008.

Allen admitted that Spiker incurred certain medical expenses resulting from the collision from April 19 through May, 2005, totaling approximately $2,166. A letter from a Texas physician, Dr. W. McIntosh, was read into evidence. The physician reported that an MRI scan revealed degenerative disk disease, and that Spiker had reported that he was in constant low back pain, with pain radiating into his left arm, and that he had never had back pain prior to the collision. Dr. McIntosh assessed degenerative disk disease of the cervical and lumbar spine, as well as post-traumatic aggravation of the disease.

Spiker called as a witness Dr. Steven C. Allen, an orthopedic

surgeon in Savannah, who testified that he evaluated Spiker on August 20, 2007, and that he suffered from "soft tissue injuries compounded by preexisting degenerative changes in his spine, causing him to have pain." According to Dr. Allen, Spiker's history revealed no complaints of neck or back pain prior to the collision, and Dr. Allen opined that Spiker's current symptoms directly resulted from the collision. On cross-examination, Dr. Allen admitted that there was no indication of any acute injury on the radiology films that were taken eight days after the collision and that it was likely that the bulging disk shown on the film predated the accident, as did Spiker's degenerative disk disease. Dr. Allen also testified that, despite the history provided by Spiker, the "probability" that a man of Spiker's age who did HVAC work was that he had "some degree of discomfort" from the disease prior to the accident. On redirect, Dr. Allen was asked whether the medical treatment Spiker received was necessary and proper. Dr. Allen responded as follows: "I think everything he had was appropriate. Again the word necessary is — as I alluded to . . . physical therapy helps a good number, but if you improve 85 percent with therapy and [70] percent without physical therapy, is it necessary?" Dr. Allen thereafter testified that the treatment Spiker received, both in Savannah and in Texas, was reasonable and was "causally related" to the injuries received in the accident.

In moving for a directed verdict as to the medical bills, Spiker argued that, despite Dr. Allen's testimony questioning the necessity of the physical therapy, all of the evidence showed that the medical bills were reasonable. The trial court granted Spiker's motion. Thereafter, Spiker's counsel argued in closing that, because the trial court had directed a verdict for the medical bills and Allen had admitted liability, "the only thing you are to consider in this case is what amount, if any, in general damages should be awarded" for pain and suffering. The jury returned an award of $90,000 in general damages.

In its order denying the defendants' motion for new trial, the trial court ruled that although the defense "brought out discrepancies in the expert testimony tending to show that the claimed injuries were also consistent with a preexisting degenerative condition," the attempts to discredit the witness "did not constitute evidence." Thus, the court concluded that there was no evidence by which the jury could find that the bills were not causally connected to the collision, and Spiker was entitled to a directed verdict.

The trial court erred in concluding that the discrepancies in Dr. Allen's testimony did not constitute "evidence" warranting submis-

sion of the medical expense claim to the jury.[4] The weight and credit to be given expert testimony is for the jury to decide, not the trial court. Expert testimony is intended to aid the jury in reaching the correct conclusion on a particular issue, but the jury is not bound by the expert's opinion and is entitled to give the testimony such credit as it deems appropriate.[5] In the case at bar, in order to recover his medical expenses in excess of those admitted by Allen, Spiker had to prove that such expenses resulted from the collision and were reasonably necessary.[6] "The law requires proof that the medical expenses arose from the injury sustained, and that they are reasonable and necessary before they are recoverable."[7] Dr. Allen questioned whether a certain portion of Spiker's medical treatment was reasonably necessary and cast doubt on whether Spiker truthfully reported that he never experienced pain due to his degenerative disk disease prior to the collision. Construing this testimony in Allen's favor and giving him the benefit of all reasonable deductions that may be drawn therefrom, the evidence was sufficient to raise a jury issue as to whether all of the medical treatment was reasonably necessary. Thus, the evidence did not demand a finding that all of Spiker's medical bills were caused by the collision.

Moreover, it is a well-established general principle of law that, except in plain and indisputable cases, the question of whether the plaintiff has proved that all of his damages arose from a collision is one for the jury to determine.[8]

> In the case of injuries allegedly arising from an automobile accident, even if plaintiff has established that [he] has suffered certain substantial physical injuries and even if the nature of these injuries is consistent with [his] assertion they were the result of a motor vehicle collision, the

---

[4] See, e.g., *Hambrick v. Makuch*, 228 Ga. App. 1, 3 (2) (b) (491 SE2d 71) (1997) (plaintiff's characterization of physicians' testimony as "uncontradicted" deemed "inaccurate" where discrepancies were brought out during cross-examination).

[5] Id.

[6] See OCGA § 51-12-7: "In all cases, necessary expenses consequent upon an injury are a legitimate item in the estimate of damages." The pattern jury charge on medical expenses provides: "In all cases, necessary expenses resulting from the injury are a legitimate item of damages. As to medical expenses, such as hospital, doctor, and medicine bills, the amount of the damage would be the reasonable value of such expense as was reasonably necessary." See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. I: Civil Cases, § 66.040 (5th ed. 2007).

[7] *Barnes v. Cornett*, 134 Ga. App. 120-121 (3) (213 SE2d 703) (1975).

[8] *King v. Loyd*, 170 Ga. App. 638, 639 (1) (317 SE2d 879) (1984). See *Williams v. Kennedy*, 240 Ga. 163 (1) (240 SE2d 51) (1977) (questions of negligence and causation "are peculiarly matters for the jury, and a court should not take the place of the jury in solving them") (citations and punctuation omitted).

evidence does not require a conclusion that plaintiff's injuries were proximately caused by defendant's negligence.[9]

For all of the above-stated reasons, we conclude that the trial court invaded the province of the jury in directing a verdict in favor of Spiker on this issue.

The issue becomes, then, whether the erroneous grant of a directed verdict necessitates setting aside the award of general damages. We note that the trial court charged the jury that it "has directed a verdict in favor of the plaintiff for the medical bills which he has introduced in the amount of $7,493, so your duty is to determine the nature and extent of the plaintiff's injuries and the amount of general damages, if any, which you find to be appropriate in this case." We conclude that the trial court's decision to direct a verdict, and to inform the jury that Spiker's medical bills were caused by the collision, requires a new trial. "Ordinarily, error is presumed hurtful unless it appears to have had no effect upon the result of the trial."[10] We have no way of determining whether or not the jury factored the medical bills into account in awarding general damages. Thus, we cannot say that the error was harmless to the defense. The medical expenses may not simply be written off from the judgment, as Spiker suggests.[11] Accordingly, the judgment must be reversed for a new trial.

2. We do not address Allen's remaining enumerated errors, as they are unlikely to recur upon retrial.

*Judgments reversed. Johnson, P. J., and Ellington, J., concur.*

---

[9] *Butts v. Williams*, 247 Ga. App. 253, 256 (543 SE2d 779) (2000), citing *Blosfeld v. Hall*, 236 Ga. App. 286, 288 (511 SE2d 196) (1999). Accord *McBryde v. Roberts*, 160 Ga. App. 416-417 (1) (287 SE2d 349) (1981).

[10] (Citation and punctuation omitted.) *Foster v. Harmon*, 145 Ga. App. 413, 415 (1) (243 SE2d 659) (1978). See also *Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547) (1988) (error in the court's jury charge is presumed prejudicial and harmful "unless it appears from the entire record that the error is harmless") (citation and punctuation omitted). Cf. *Dept. of Transp. v. Davison Investment Co.*, 267 Ga. 568 (1) (481 SE2d 522) (1997) ("An appellate court may affirm the judgment of the lower court upon the condition that an erroneous judgment be corrected by writing off the illegal portion, if the illegal portion can be determined and is separable from the rest") (citation omitted).

[11] Compare *Love v. Nat. Liberty Ins. Co.*, 157 Ga. 259, 271 (121 SE 648) (1924) (erroneously awarded attorney fees ordered stricken from the verdict because it was separable from the balance of the judgment); *Floyd v. First Union Nat. Bank of Ga.*, 203 Ga. App. 788, 793 (3) (417 SE2d 725) (1992) (award of $25,000 in actual damages affirmed for breach of contract and conversion; new trial warranted only on claims of attorney fees and punitive damages); *Scott v. Thompson*, 193 Ga. App. 487, 488 (2) (388 SE2d 371) (1989), aff'd, *Thompson v. Scott*, 260 Ga. 164 (393 SE2d 447) (1990) (issue of actual damages in suit on note separable from issues of attorney fees and punitive damages); *Co-op Cab Co. v. Arnold*, 106 Ga. App. 160, 164 (3) (126 SE2d 689) (1962) (judgment affirmed on condition that award of $200 in punitive damages be written off).

DECIDED NOVEMBER 20, 2009 —
RECONSIDERATIONS DENIED JANUARY 8, 2010 —

*Hugh M. Worsham, Jr.*, for appellant (case no. A09A2041).

*Brennan, Harris & Rominger, Mason White, James D. Kreyenbuhl*, for appellant (case no. A09A2042).

*George L. Lewis*, for appellee.