**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0184. LION ANTIQUE CARS & INVESTMENTS, INC. v.
    TAFEL.

MILLER, Judge.

Lion Antique Cars & Investments, Inc. ("Lion") brought suit against its former business associate, Jim Tafel, to recover two Ferrari race cars. In the course of discovery, the trial court ordered Lion to produce documents relating to its use of the race cars and found Lion in contempt after it failed to produce the documents. Lion appeals from the trial court's denial of its motion to purge the contempt, contending that it was unable to comply with the trial court's order. For the reasons that follow, we affirm.

"The question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion."

(Citation and punctuation omitted.) *G. I. R. Systems v. Lance*, 228 Ga. App. 329, 331 (4) (491 SE2d 530) (1997). If there is any evidence in the record to support a trial court's determination of contempt, the decision will be affirmed on appeal. See id.

Lion is a California corporation that buys, sells and trades vehicles, including race cars. Tafel is a Georgia resident and he served as CEO and CFO of Tafel Racing, Inc., a professional racing team.[1] In December 2007, Lion entered into an agreement with Tafel Racing to purchase two Ferrari race cars and loan them to Tafel Racing for the 2008 American LeMans series. In exchange, Pierre Ehret, the German president of Lion, would drive one of the race cars during the series. Tafel Racing was required to insure both race cars and, after the conclusion of the series, it was required to purchase or sell both cars. The race cars remained the property of Lion.

Tafel breached the race car agreement by failing to obtain insurance on the cars and Lion filed suit against Tafel and Tafel Racing in the Superior Court of California. The parties stipulated to a judgment, equal to the purchase price of the race cars, in favor of Lion.

Lion thereafter filed a petition in the Superior Court of Fulton County to recover the race cars and to domesticate the California judgment. In January 2009, the

---

[1] Tafel Racing declared bankruptcy in February 2009.

trial court issued a turnover order directing Tafel and Tafel Racing to return the race cars to Lion and directing Lion to "immediately" market and sell the vehicles at the highest price obtainable. The sale price was then to be subtracted from the judgement against Tafel. Tafel Racing returned the cars to Lion.

Rather than selling the returned cars, Ehret delivered one of the cars to the Farnbacher Racing Team, owned by Horst Farnbacher, a German resident, and Ehret raced the car as part of that team. Ehret lent Farnbacher the car so that Farnbacher could fulfill his obligations under a racing sponsorship agreement with Hankook Tire. Ehret drove race cars for Farnbacher's racing teams numerous times from 2005 to 2009 and considered him a personal friend.

Tafel sought supplemental discovery related to possible equitable claims arising from Lion's use of the race cars in violation of the trial court's order to sell the cars.[2] When Lion failed to provide discovery, Tafel filed a motion to compel. The trial court granted Tafel's motion and ordered Lion to produce, inter alia, various categories of documents related to Ehret's use of the car while racing for the

---

[2] When Lion failed to sell the cars, Tafel filed a motion for the judgment to be deemed satisfied in full. A jury determined the fair market value of the cars on the date of the turnover order. The trial court thereafter issued a final order, denying Tafel's claim for equitable relief and deducting the fair market value of the race cars from the judgment.

Farnbacher Racing Team. In response, Lion filed an affidavit by Ehret in which he claimed that many of the requested documents were not in his possession, but rather, were in Farnbacher's possession.

Tafel then filed a motion for contempt. After a hearing, the trial court entered a second order requiring Lion to produce within seven business days or be subject to a daily fine of $1,000 the following documents: the Hankook Tire sponsorship agreement; any agreement between Lion or Ehret and Farnbacher that concerned the race car; and the records of any repairs or upgrades made to the car in 2009. On the seventh business day, Lion filed a motion to purge the contempt. Finding that Lion had not used all reasonable efforts to obtain the documents, the trial court denied Lion's motion and began imposing civil fines on May 30, 2014.

After the trial court denied Lion's motion to purge the contempt, Ehret contacted Farnbacher again and offered to pay him for the documents. Farnbacher agreed and sent Ehret the sponsorship agreement and invoices for car repairs. Farnbacher, however, refused to provide additional documents that were in his accountant's possession. In its final order, the trial court found Lion in contempt from May 30 through June 10, 2014, the date of the final hearing.

4

On appeal, Lion contends that the trial court erred in holding it in contempt for failing to produce the sponsorship agreement and documents relating to Farnbacher's use of the race car because Lion was unable to comply with the trial court's discovery orders. We disagree.

> Discovery is an integral and necessary element of our civil practice. Wide latitude is given to make complete discovery possible. The broad purpose of the discovery rules, under the Civil Practice Act, is to enable the parties to prepare for trial so that each party will know the issues and be fully prepared on the facts.

(Citations and punctuation omitted.) *Intl. Harvester Co. v. Cunningham*, 245 Ga. App. 736, 738 (1) (538 SE2d 82) (2000). As such, trial courts are empowered with "broad discretion to control discovery, including the imposition of sanctions." (Citation and punctuation omitted.) *Expedia, Inc. v. City of Columbus*, 305 Ga. App. 450, 451 (699 SE2d 600) (2010).

Lion argues that the documents at issue were not in its possession, custody or control because Lion exercised no control over Farnbacher. See OCGA § 9-11-34 (a) (1) (under the Civil Practice Act, a party may ask an opposing party to produce documents that are within its "possession, custody or control"). All of the documents at issue, however, related to Farnbacher's use of *Lion's car*. There was also evidence

5

of a close, longstanding relationship between Lion's president and Farnbacher. Finally, the record shows that Lion was subsequently able to obtain some of the documents from Farnbacher, which shows that Lion had some measure of control over the documents, despite the fact that the documents were in Farnbacher's possession.

Lion also argues that it has demonstrated that it was unable to comply with the trial court's orders. It is a complete defense to contempt that a party is unable to comply with the trial court's order. See *Turner Advertising Co. v. Garcia*, 252 Ga. 101, 102 (2) (311 SE2d 466) (1984). A party claiming that it is unable to comply with a court order, however, may not rely on mere assertions of inability. See *U. S. v. Hayes*, 722 F2d 723, 726 (II) (11th Cir. 1984); see also *McKesson HBOC, Inc. v. Adler*, 254 Ga. App. 500, 503 (1) n.4 (562 SE2d 809) (2002) (since Georgia's Civil Practice Act is modeled on the Federal Rules of Civil Procedure, decisions of federal courts interpreting the federal rules during discovery disputes are persuasive). Rather, "a party under court order to produce documents has a duty to make in good faith all reasonable efforts to comply" with the trial court's order. (Citation and punctuation omitted.) *Hayes*, supra, 722 F2d at 726 (II); see also *Vickers v. Vickers*, 220 Ga. 258, 260 (138 SE2d 308) (1964) (affirming contempt finding where party failed to show

6

"conclusively or affirmatively that he was unable to comply" with the trial court's order) (citations omitted.)

Prior to being found in contempt and sanctioned, Lion failed to do anything more than ask Farnbacher to hand over the documents.[3] See *Hayes*, supra, 722 F2d at 726 (II) (party's failure to do anything more than request documents from a third party does not establish an inability to comply with a trial court's order). In an affidavit accompanying the motion to purge contempt, Ehret averred that in an attempt to obtain the sponsorship agreements and repair records, he contacted Farnbacher by email and telephone.[4] The record shows, however, that Lion was later able to obtain a number of the relevant documents from Farnbacher. Accordingly, there is evidence that Farnbacher could have been persuaded to produce the documents earlier and, thus, the trial court did not err in concluding that Lion had the ability to comply with the trial court's orders.

---

[3] We note that the trial court, in its denial of Lion's motion to purge contempt, ordered Lion, to the extent that it claimed that any third party refused to provide the ordered discovery, to produce a written statement in admissible form from the third party setting forth the refusal and reasons therefore. Lion failed to do so.

[4] Attached to the affidavit were also emails, in German, exchanged between Farnbacher's attorney and Tafel's attorney in Germany, in which Farnbacher refused to provide the sponsorship documents to Tafel.

Moreover, Lion lent the race car to Farnbacher in violation of the trial court's turnover order. Therefore, Lion cannot now claim that it is unable to comply with the trial court's discovery order as a result of Farnbacher's unwillingness to assist. In a contempt proceeding, "the defendant's own acts cannot be responsible for his inability to comply." (Citation omitted.) *Turner Advertising*, supra, 252 Ga. at 102 (1); see also *Kace Investments, LP v. Hull*, 278 Ga. App. 477, 484-485 (2) (629 SE2d 26) (2006) (holding that the plaintiff could not complain that it was unable to comply with the trial court's order to respect the defendant's easement because of its lease with a third party, where plaintiff had entered into lease knowing that property was subject to an easement). Accordingly, the trial court did not grossly abuse its discretion in finding Lion in contempt because Lion did not make all reasonable efforts to comply with the trial court's order compelling discovery. See *G. I. R. Systems*, supra, 228 Ga. App. at 331 (4).

*Judgment affirmed. Andrews, P. J., and Branch, J., concur in judgment only*.

8