**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2024**

# In the Court of Appeals of Georgia

A24A1046. MEDERNIX, LLC v. SNOWDEN et al.

A24A1047. ORTHO SPORT & SPINE PHYSICIANS, LLC v. SNOWDEN et al.

BARNES, Presiding Judge.

In these companion appeals arising out of a discovery dispute in a personal injury case, two non-parties, Ortho Sport & Spine Physicians, LLC ("Ortho Sport") and Medernix, LLC, challenge the trial court's order compelling them to produce a database report and other documents to the defendants ("Production Order") and a related protective order ("Protective Order").[1] For the reasons discussed below, we conclude that the trial court abused its discretion in requiring Ortho Sport and

---

[1] The discovery orders are directly appealable under the collateral order doctrine. See *Benchmark Rehabilitation Partners v. SDJ Logistics*, 367 Ga. App. 203, 204 (2) (885 SE2d 224) (2023).

Medernix to create and produce a requested database report containing extensive financial and billing information because the report was overly broad and was not reasonably calculated to lead to admissible evidence. We therefore vacate the Production Order and Protective Order to the extent that they required Ortho Sport and Medernix to create and produce the database report and remand for further proceedings consistent with this opinion.

The record reflects that Glenda Ochoa sued John Ernest Snowden, New South Trucking, LLC, LAD Truck Lines, Inc., and Protective Insurance Company in the Superior Court of Oconee County for damages arising from an automobile accident.[2] As part of her damages, Ochoa sought to recover her past and future medical expenses, and she relied on medical treatment and bills she received from different providers, including Ortho Sport. Ortho Sport is an orthopedic medical practice with locations in several states. Ortho Sport provided medical treatment to Ochoa pursuant to a "letter of protection," a contractual arrangement under which a patient is permitted to undergo treatment and defer payment to a later date. Under such a

[2] In addressing the factual and procedural history of these companion appeals, we have taken into account both appellate records. See *Sentinel Offender Svcs. v. Glover*, 296 Ga. 315, 321, n. 13 (766 SE2d 456) (2014) (explaining that reviewing courts may take judicial notice of the records in companion appeals).

contract, the patient's outstanding medical debt is collateralized by any potential claim arising from the alleged injuries and is secured by a medical lien, but the patient remains personally liable for the balance. See generally OCGA § 44-14-470 et seq. (setting out the statutory framework for medical liens). Ochoa's medical bills for treatment she received from Ortho Sport exceeded $18,000.

During the course of the litigation, the defendants served Ortho Sport and its claims manager, Medernix, with almost identical requests for production of records and database materials. Pertinent to those requests, Ortho Sport and Medernix utilized two software databases: eClinicalWorks, which was a medical billing and records software program, and Salesforce, which included information about any law firm associated with a patient. Among other materials, the defendants sought (1) communications between Ortho Sport, Ochoa's attorneys, and any litigation funding companies involved in the case, including communications logged into eClinicalWorks and/or Salesforce; (2) all applicable contracts between Ortho Sport, Ochoa, Ochoa's attorneys, and any litigation funding companies involved in the case; (3) "HIPAA audit logs"[3] reflecting who had accessed Ochoa's medical files and any changes made

_____

[3] "HIPAA" refers to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191.

to those files; and (4) a database report revealing Ortho Sport/Medernix's billed charges or rates, as well as any adjustments made to those rates charges or rates, "categorized by associated law firm referral partner." Additionally, the defendants requested that Ortho Sport/Medernix generate eClinicalWorks Report 37.08, "Financial Analysis at CPT Level (With Everything)," which was a spreadsheet that would list, for every Ortho Sport patient, the amount billed for each visit or procedure at every Ortho Sport location, categorized by CPT code;[4] the amount written-off, adjusted, or accepted in satisfaction for each such bill; the payor of each bill; and information about who referred each patient to Ortho Sport (the "Database Report" or "Report"). The defendants requested that the Database Report include information for the past three years, and further advised that all "HIPAA-protected personal identifying information," such as patient names and addresses, could be redacted.

---

[4] "CPT" code
stands for Current Procedural Terminology codes. CPT codes are a national uniform coding structure created for use in billing and overseen by the American Medical Association. They are used by all health insurance companies and by Medicare and Medicaid. A code represents at least two things: the procedure or service performed and the level of complexity involved in it.

*United States v. Moss*, 34 F4th 1176, 1181-1182 (I) (A) (11th Cir. 2022).

When Ortho Sport and Medernix did not produce all of the requested materials, including the Database Report, the defendants filed a motion to compel their production. Among other things, the defendants argued that the Database Report was discoverable because it would reveal data pertaining to the reasonableness and necessity of Ortho Sport / Medernix's medical bills issued for the treatment of Ochoa, and would reveal data pertaining to the scope of Ortho Sport's relationship with personal injury law firms generally and Ochoa's attorneys in particular, which would be relevant to issues of bias, intent, and motive. In connection with their motion to compel, the defendants submitted the affidavit of an expert in the eClinicalWorks software program, who provided instructions on how to generate the Database Report. The defendants specified that the names of any patients and other personal identifying information should be redacted from the Database Report, and the instructions provided by the software program expert explained how to generate a report with that information blacked out.

Additionally, the defendants submitted a sealed letter brief and two sealed exhibits to the trial court in chambers as part of their motion to compel.[5] The sealed

[5] The trial court subsequently entered an order providing that the exhibits would remain under seal but would be made part of the record.

exhibits were attorney referral ledgers created by clinics that allegedly were analogous to Ortho Sport, and which the defendants argued could serve as exemplars for the type of information they were seeking to have produced in the present case. The defendants further argued that the sealed ledgers showed that Ochoa's attorneys had extensive referral relationships with other, similar Atlanta orthopedic clinics.

Ortho Sport filed a response in opposition to the motion to compel and a motion for protective order, asserting, among other things, that the Database Report was not relevant to the issues of physician bias or the reasonableness and necessity of medical treatment; that it included confidential financial data, trade secrets, and collateral source information that were not discoverable; and that it was overly broad, unduly burdensome, and disproportionate to the needs of the case. In support of its position, Ortho Sport submitted the affidavit of its Chief Executive Officer detailing the confidential nature of the extensive medical and billing data contained in the Database Report. Medernix also filed a response in opposition to the motion to compel, raising arguments similar to those of Ortho Sport but also contending that it did not have possession of the documents and database materials sought by the defendants.

The trial court conducted a hearing on the competing motions. At the hearing, the defendants' counsel commented on the entry of a protective order:

> The one thing I would ask, the one thing about the protective order is this: If the Court sees fit to grant this discovery and put a protective order on it, bind my hands, bind [co-counsel's] hands, tell us not to tell anybody, I am fine with that. No problem at all.
>
> I would just ask the Court to include a clause that allows us to present that evidence in chambers to a court, as I have done with you, so that other judges have the benefit of understanding what we're talking about and so there isn't a circumstance where Ortho Sport or Medernix can revert to claiming this stuff doesn't exists.

Following the hearing, the trial court granted the defendants' motion to compel production of the Database Report and other requested materials, finding that "these specific materials are reasonably calculated to lead to admissible evidence," and that "these materials are uniquely in the possession of Ortho Sport and Medernix and thus good cause exists to compel their production according to OCGA § 9-11-34 (c) (2)." In conjunction with its order granting the motion to compel, the trial court entered a protective order requiring Ortho Sport and Medernix to redact personal health information of patients from the Database Report and other requested materials in

accordance with HIPAA requirements. The protective order also specified that the Database Report should include data "for the three years prior to the date of [the defendants' requests for production made to Ortho Sport and Medernix] through and including the date of production," which meant that, based on the date of the protective order, Ortho Sport and Medernix were required to produce approximately four years of financial data. The protective order did not otherwise place any restrictions on the use, dissemination, or confidentiality of the produced materials requested by the defendants.

These companion appeals by Ortho Sport and Medernix followed.[6]

*Case No. A24A1047*

1. Ortho Sport contends that the trial court abused its discretion by entering a protective order that failed to shield it from producing the Database Report. According to Ortho Sport, the Database Report was overly broad, and requiring it to create and produce the Report to the defendants constituted an unreasonable invasion of its privacy rights and was manifestly unjust and oppressive.

---

[6] We thank the Georgia Defense Lawyers Association for its amicus curiae brief filed in Case No. A24A1047.

"The scope of discovery under the Civil Practice Act [("CPA")] is broad."

*General Motors v. Buchanan*, 313 Ga. 811, 814 (2) (a) (874 SE2d 52) (2022).

> Under OCGA § 9-11-26 (b) (1), parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. Pursuant to OCGA § 9-11-34 (a) (1), a party may request that another party produce documents containing matter discoverable within the scope of OCGA § 9-11-26 (b), and OCGA § 9-11-34 (c) (1) establishes that the discovery of . . . [such] documents also applies to nonparties.

(Citations and punctuation omitted.) *Benchmark Rehabilitation Partners v. SDJ Logistics*, 367 Ga. App. 203, 206 (5) (885 SE2d 224) (2023). See *Ortho Sport & Spine Physicians v. City of Duluth*, 352 Ga. App. 215, 216 (2) (834 SE2d 315) (2019).

"[I]n the discovery context, courts should and ordinarily do interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." (Citations and punctuation omitted.) *Bowden v. Medical Center*, 297 Ga. 285, 291 (2) (a) (773 SE2d 692) (2015). "Moreover, it is not ground for objection that the information sought will be inadmissible at the trial if the information sought

9

appears reasonably calculated to lead to the discovery of admissible evidence." (Citation and punctuation omitted.) *General Motors*, 313 Ga. at 814-815 (2) (a).

Nevertheless, the fact that certain records are nonprivileged and relevant "does not automatically mean that they are discoverable." *Bethune v. Bethune*, 363 Ga. App. 273, 277 (2) (a) (870 SE2d 827) (2022). "Under general discovery rules applicable to all parties, not only must a trial court determine whether the requested discovery is relevant and material, but when parties seek discovery of unprivileged but sensitive materials, the trial court must balance the requesting party's specific need for the material against the harm that would result by its disclosure." *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 812 (2) (555 SE2d 175) (2001). A trial court is obligated to apply this balancing test to determine whether discovery of the requested sensitive materials would subject the producing party to "annoyance, embarrassment, oppression, or undue burden or expense." Id. (quoting OCGA § 9-11-26 (c)). And when a party's request for information is overly broad, the request should be denied. See *Jenkins v. Smith*, 308 Ga. App. 762, 767-768 (5) (709 SE2d 23) (2011). Moreover, "where pre-trial discovery of [the producing party's] financial resources is authorized, the scope of such should be restricted to the extent necessary to prevent

10

an unreasonable intrusion into the [party's] privacy." (Citation and punctuation omitted.) *Southern Outdoor Promotions v. Nat. Banner Co.*, 215 Ga. App. 133, 135-136 (4) (449 SE2d 684) (1994).

A trial court may grant a protective order and prohibit or limit certain requested discovery for "good cause shown" under OCGA § 9-11-26 (c), and the movant bears the burden of showing his or her entitlement to such an order. *General Motors*, 313 Ga. at 815 (2) (a). "The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court, and the exercise of that discretion is reviewed on appeal for abuse." (Citation and punctuation omitted.) Id. "But although that discretion is wide, it can be abused." *Bethune*, 363 Ga. App. at 276 (2). See id. at 276-278 (2) (a) (vacating trial court's discovery ruling and remanding for application of the balancing test required in cases where a party seeks discovery of unprivileged but sensitive financial materials).

In the present case, the defendants argued that the Database Report was discoverable because it was reasonably calculated to lead to the discovery of admissible evidence regarding the reasonableness and necessity of the medical expenses incurred by Ochoa at Ortho Sport and regarding the bias of Ochoa's treating physicians there.

It is true that to recover medical expenses in a personal injury action, a plaintiff such as Ochoa must show that the expenses arose from the injury sustained and were reasonable and necessary. See *Allen v. Spiker*, 301 Ga. App. 893, 896 (1) (689 SE2d 326) (2009). See also OCGA § 51-12-7 ("In all cases, necessary expenses consequent upon an injury are a legitimate item in the estimate of damages."); *Barnes v. Cornett*, 134 Ga. App. 120, 120-121 (3) (213 SE2d 703) (1975) ("The law requires proof that the medical expenses arose from the injury sustained, and that they are reasonable and necessary before they are recoverable."). And the amount that Ortho Sport charged, wrote-off, adjusted, or accepted as payment in full from other patients *for the same types of treatment at the same medical facility during the same general time period as Ochoa* may have some relevance – "particularly in the broad discovery sense" – to the reasonableness and necessity of the charges for Ochoa's care and thus be discoverable. *Bowden*, 297 Ga. at 291 (2) (a) (in case involving a dispute over the amount of a medical lien, explaining that "[t]he amounts that [the hospital] charged to (and agreed to accept as payment in full from) other patients treated at the same hospital for the same type of care during the same general time frame that [the injured party] was treated" were potentially relevant to the reasonableness of the charges for that party's

12

care and therefore were discoverable). See *Benchmark Rehabilitation Partners*, 367 Ga. App. at 203 (1), 205-207 (5) (concluding in personal injury case that trial court did not abuse its discretion in compelling production of third-party clinic's "rate sheet"); *WellStar Kennestone Hosp. v. Roman*, 344 Ga. App. 375, 378 (810 SE2d 600) (2018) (concluding that information regarding the rates charged by a hospital to other patients for the same services and treatment that it provided to the tort victim, and the amounts written off those other patients' bills, were subject to discovery in personal injury action).

It is also true that a treating physician's "financial interest in the outcome of the case is highly relevant to the issue of his credibility and potential bias." *Stephens v. Castano-Castano*, 346 Ga. App. 284, 291 (2) (a) (814 SE2d 434) (2018) (physical precedently only). See OCGA § 24-6-622 ("The state of a witness's feelings towards the parties and the witness's relationship to the parties may always be proved for the consideration of the jury.");[7] *Lloyd v. State*, 40 Ga. App. 230, 231 (149 SE 174) (1929)

_____

[7] Because OCGA § 24-6-622 is "a 'holdover' from Georgia's old Evidence Code with no federal counterpart, [we] look[ ] to Georgia cases decided under the former version of that rule – OCGA § 24-9-68 – for guidance." (Citation and punctuation omitted.) *Merritt v. State*, 311 Ga. 875, 880 (3) (a) (i) (860 SE2d 455) (2021).

("The intent or motive of a witness is a legitimate subject of inquiry, and the fact that a witness, in his connection with any pending litigation, is influenced by financial considerations may affect his credit and diminish the weight of his testimony.") (citations and punctuation omitted). And evidence that the plaintiff's counsel has a close relationship with and a history of making referrals to the plaintiff's treating physician can be relevant to show the bias of that physician. See *Canada v. Shropshire*, 232 Ga. App. 341, 342-343 (501 SE2d 860) (1998). Cf. *Stephens*, 346 Ga. App. at 291-292 (2) (b) (concluding that trial court was authorized to find that evidence that the plaintiff's attorney referred the plaintiff to her treating physician, standing alone, was not "sufficient to affect [the physician's] credibility or to show bias" and, without more, was irrelevant and inadmissible). Thus, documents reasonably calculated to lead to this type of financial information concerning a treating physician's bias would be discoverable.

However, the information contained in the Database Report that the defendants sought to have Ortho Sport create would be far more extensive in scope. The Report would include detailed financial information about each of Ortho Sport's patients, regardless of the type of treatment received, the clinic location where the treatment

14

occurred, or the physician providing the treatment. The Database Report also would include all CPT Codes for every visit and every treatment of every patient, the name of a payor on an account if other than the patient, and the names of all sources of patient referrals. Additionally, the Database Report, as ordered by the trial court, would include all of the aforementioned financial data for a time period extending over four years.

Given the extensive breadth of sensitive financial information that would be contained in the Database Report, the requested Report was not reasonably calculated to lead to discovery of admissible evidence, and the Report was so overly broad that the trial court abused its discretion in denying Ortho Sport's request for a protective order prohibiting its production to the defendants. See *Southern Outdoor Promotions*, 215 Ga. App. at 135-136 (4) (concluding that trial court abused its discretion in ordering the production of company's current balance sheet and all schedules, ledgers, and other supporting documents because the request for financial information was unrestricted in scope); *Holman v. Burgess*, 199 Ga. App. 61, 64 (404 SE2d 144) (1991) (concluding that trial court abused its discretion in requiring defendant to produce extensive financial and property records because the request was "manifestly

15

burdensome and oppressive"). See also *Jenkins*, 308 Ga. App. at 767-768 (5) (concluding that request "for disclosure of 'all contacts' was overbroad and was not limited in scope to communications relevant to the instant lawsuit," such that request was properly denied by the trial court); *Dikeman v. Mary A. Stearns, P.C.*, 253 Ga. App. 646, 647-648 (1) (a) (560 SE2d 115) (2002) (concluding that trial court properly denied overly broad discovery request for extensive client billing information, and noting that "where the information pertains to nonparties, confidentiality concerns may justify protecting other clients' bills, not specifically related to the asserted cause of action, from discovery").

Additionally, the trial court did not place any restrictions on the use, dissemination, or confidentiality of the sensitive financial data that would be contained in the Database Report, despite the fact that at the hearing on the matter, defense counsel did not oppose the imposition of at least some restrictions on the use and dissemination of the database data. The trial court had an obligation to enter an order that would "provide reasonable protection for [Ortho Sport's] legitimate proprietary concerns regarding its financial information," and it abused its discretion in failing to

16

impose any restrictions with respect to the use and dissemination of the data. *McGinn v. McGinn*, 273 Ga. 292, 294 (540 SE2d 604) (2001).

Under these circumstances, we vacate the Protective Order to the extent that it required Ortho Sport to produce the Database Report to the defendants. We remand for the trial court to determine whether a more limited report from the eClinicalWorks program can be generated consistent with this opinion, subject to reasonable restrictions on the use and dissemination of any such report.

2. In a related argument, Ortho Sport maintains that the trial court abused its discretion in granting the defendants' motion to compel production of the Database Report.[8] For the same reasons discussed supra in Division 1, we conclude that the trial court abused its discretion in compelling the Report's production. "Considering the relatively unrestricted scope of the request for financial information here sought, . . . the request for production submitted by the [defendants] in this case was so [overly broad,] manifestly burdensome and oppressive that the trial court [was not] authorized to compel responses to it." (Citation and punctuation omitted.) *Southern Outdoor Promotions*, 215 Ga. App. at 136 (4). See *Holman*, 199 Ga. App. at 64. Accordingly, we

---

[8] Ortho Sport does not contest the portions of the Production Order that compelled it to produce other records and materials.

vacate the Production Order to the extent that it required Ortho Sport to produce the Database Report and remand for the trial court to determine whether a more limited report from the eClinicalWorks program can be generated consistent with this opinion, subject to reasonable restrictions on the use and dissemination of any such report.

3. Because the issue is likely to recur on remand, we address Ortho Sport's argument that it cannot be compelled to produce a database report that it does not create in the ordinary course of its business. According to Ortho Sport, the CPA does not require a party responding to discovery to create a new document. Ortho Sport's argument is misplaced in light of the CPA's discovery provisions regarding "data compilations."

OCGA § 9-11-34 (a) (1) provides in part:

(a) Scope. Any part may serve on any other party a request:

(1) To produce and permit the party making the request, or someone acting on his behalf, to inspect and copy any designated documents (including writings, drawings, graphs, charts, photographs, phono-records, and *other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form*)[.]

18

(Emphasis supplied.) And that provision also applies to discovery requests sent to non-parties. See OCGA § 9-11-34 (c) (1).

Georgia's discovery rules are based on the 1970 amendments to the Federal Rules of Civil Procedure. See *Norfolk S. R. Co. v. Hartry*, 316 Ga. App. 532, 533, n. 3 (729 SE2d 656) (2012). "Cases and commentary interpreting the language used in the 1970 version of the federal discovery rules are therefore persuasive authority in interpreting Georgia's discovery statutes." *Bowden*, 297 Ga. at 291 (2) (a), n. 5.

The Advisory Committee notes to the 1970 amendments to Federal Rule of Civil Procedure 34 state that the rule

> applies to electronic data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical matter be made usable by the discovering party only through respondent's devices, *respondent may be required to use his devices to translate the data into usable form*.

(Emphasis supplied.) Fed. R. Civ. Proc. 34 advisory committee note. "Data compilations" include electronic computer storage systems. See *Norfolk S. R. Co.*, 316 Ga. App. at 533, n. 3. Thus, where the requested document is data drawn from the producing party's electronic computer storage system, that "party [can be] tasked

with translating the document through detection devices into reasonably usable form." (Citation and punctuation omitted.) Id. at 533. Accordingly, contrary to Ortho Sport's contention, it can be compelled to extract data from its medical billing and records software program, eClinicalWorks, and translate that date into a report, even if it does not regularly create such a report as part of its business. See *Martin v. Fulton County Bd. of Registration & Elections*, 307 Ga. 193, 216 (2) (c) (835 SE2d 245) (2019) (concluding that the trial court acted within its discretion in requiring the defendants "to produce certain reports generated from . . . [a] database" rather than allowing the petitioners direct access to the database); *Georgia Emission Testing Co. v. Reheis*, 268 Ga. App. 560, 565 (3) (602 SE2d 153) (2004) (physical precedent only) (concluding that the trial court did not abuse its discretion in ordering the production of a report, even though "the requested information was not the subject of a regularly produced report and had to be extracted from a massive database of information"). See also *North Shore-Long Island Jewish Health Sys. v. MultiPlan*, 325 FRD 36, 51 (III) (D) (E. D. N. Y. 2018) ("While a party should not be required to create completely new documents, that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports

from dynamic databases, holding that the technical burden of creating a new dataset for litigation does not excuse production.") (citations and punctuation omitted); *Gonzales v. Google*, 234 FRD 674, 683 (IV) (B) (1) (N. D. Cal. 2006) (noting that "[a]s a general rule, non-parties are not required to create documents that do not exist, simply for the purposes of discovery," but drawing a distinction between the creation of a new document and the "extract[ion] [of] the information requested from [a company's] existing systems.").

4. We also address Ortho Sport's argument that any information about the amounts that it writes off the bills of its third-party patients is barred from discovery by the collateral source rule. "The collateral source rule, stated simply, is that the receipt of benefits or mitigation of loss from sources other than the defendant will not operate to diminish the plaintiff's recovery of damages." (Citation and punctuation omitted.) *Polito v. Holland*, 258 Ga. 54, 55 (3) (365 SE2d 273) (1988). But even if the collateral source rule were applicable to write-offs of third-party bills (an issue we need not decide), the rule goes only to the ultimate admissibility of the evidence at trial, not the discoverability of the information under the CPA. See *Ortho Sport & Spine Physicians*, 352 Ga. App. at 216 (2) (concluding that even if malpractice

insurance information would not be admissible at trial, the trial court committed no error in finding that it was discoverable because "it [was] reasonably calculated to lead to the discovery of admissible evidence regarding the doctor's qualifications and fees"); *WellStar Kennestone Hosp.*, 344 Ga. App. at 377 (drawing distinction between admissibility of medical charges and write-offs issued by a medical provider to third parties under the collateral source rule and whether such information is discoverable).

*Case No. A24A1046*

5. Medernix also contends that the trial court erred in requiring it to produce the Database Report. For the same reasons discussed supra in Divisions 1 and 2, we conclude that the trial court abused its discretion in requiring production of the Database Report and therefore vacate the Production Order and Protective Order to the extent that they required Medernix to produce the Report to the defendants. We remand for the trial court to determine whether a more limited report from the eClinicalWorks program can be generated consistent with this opinion, subject to reasonable restrictions on the use and dissemination of any such report.

6. Medernix also contends more broadly that the trial court erred in compelling it to produce any Ortho Sport documents or records because it did not have

22

possession, custody, or control over those materials. According to Medernix, the requested materials were in the exclusive possession and control of Ortho Sport, and it did not have authority to access those materials for purposes of discovery.

Under OCGA § 9-11-34 (a) (1), a party may request that another party produce documents that are within the "possession, custody, or control of the party upon whom the request is served," and OCGA § 9-11-34 (c) (1) establishes that the same rule applies to requests made to nonparties. OCGA § 9-11-34 (a) (1) does not define the phrase "possession, custody, or control," but, as previously noted, Georgia's discovery rules are based upon the 1970 amendments to the Federal Rules of Civil Procedure, such that federal cases interpreting language used in those amendments is persuasive authority.[9] See *Bowden*, 297 Ga. at 291 (2) (a), n. 5; *Norfolk S. R. Co.*, 316 Ga. App. at 533, n. 3.

Construing Federal Rule of Civil Procedure 34, federal courts have held that "control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon

---

[9] The phrase "possession, custody, or control" is "language that has always been in [Federal Rule of Civil Procedure 34]." Charles Alan Wright et. al., 8B Fed. Prac. & Proc. Civ. § 2210 (3d ed. April 2023 update).

demand." *Searock v. Stripling*, 736 F2d 650, 653 (11th Cir. 1984). See *Sergeeva v. Tripleton Int. Ltd.*, 834 F3d 1194, 1201 (III) (B) (11th Cir. 2016). "Control" is construed broadly in this context; it "does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents[.]" *Coventry Capital US v. EEA Life Settlements*, 334 FRD 68, 72 (II) (B) (S. D. N. Y. 2020). See *Sergeeva*, 834 F3d at 1201 (III) (B) (indicating that party has "control" over documents when it has "a practical ability to obtain [the] responsive documents") (citation and punctuation omitted); *Pesaplastic, C. A. v. Cincinnati Milacron Co.*, 799 F2d 1510, 1520 (II) (A) (11th Cir. 1986) (per curiam) (concluding that firm had control over documents when it had the authority to selectively obtain the documents from another company). "One of the circumstances which warrants a finding of control is where a corporate entity has the ability in the ordinary course of business to obtain documents held by another corporate entity." *SEC v. Credit Bancorp*, 194 FRD 469, 472 (I) (S. D. N. Y. 2000). See *Gerling Intl. Ins. Co. v. Commissioner of Internal Revenue*, 839 F2d 131, 141 (III) (3d Cir. 1988) ("[W]here there is access to the documents when the need arises in the

ordinary course of business, there is sufficient control[.]") (citation and punctuation omitted); *Camden Iron & Metal v. Marubeni American Corp.*, 138 FRD 438, 443 (II) (B) (D. N. J. 1991) ("[A] company's ability to demand and have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigating corporation's control."). Persuaded by this case law, we conclude that under OCGA § 9-11-36 (a) (1), "[a] corporate party has sufficient 'control' over documents or things to require production where the corporation has a legal right to access the item or would have access during the normal course of business." John D. Hadden & Jarome E. Gautreaux, Georgia Law Of Torts – Preparation For Trial § 21:5 (March 2024 update). See *Sergeeva*, 834 F3d at 1201 (III) (B); *Gerling Intl. Ins. Co.*, 839 F2d at 141 (III); *Pesaplastic, C. A.*, 799 F2d at 1520 (II) (A); *Searock*, 736 F2d at 653; *Credit Bancorp*, 194 FRD at 472 (I); *Camden Iron & Metal*, 138 FRD at 443 (II) (B). See also *Lion Antique Cars & Investments v. Tafel*, 332 Ga. App. 824, 826 (775 SE2d 191) (2015) (concluding that company had control over requested documents, where it "was subsequently able to obtain some of the documents" from another person).

Applying these principles, we turn to the record in the present case. The defendants presented evidence, through the deposition testimony of a Medernix case manager, that Ortho Sport employs Medernix case managers specifically to document its files, track patients and law firms involved with its patients, communicate with plaintiffs' lawyers about medical liens and surgical estimates, negotiate bills and approve or deny certain medical treatments, manage and track accounts receivable, and run reports on the patient accounts. The defendants also presented evidence, again through the Medernix case manager's deposition testimony, that Medernix case managers have authority to access Ortho Sport's information and records on SalesForce and eClinicalWorks in carrying out their job duties.

Based on this record, there was evidence Medernix had the legal right to access Ortho Sport's documents and records and/or had access to those materials during the normal course of its business. Accordingly, the trial court was authorized to find that Medernix had possession and control over Ortho Sport documents and records that were subject to discovery. See *Sergeeva*, 834 F3d at 1201 (III) (B); *Gerling Intl. Ins. Co.*, 839 F2d at 141 (III); *Pesaplastic, C. A.*, 799 F2d at 1520 (II) (A); *Searock*, 736 F2d at 653; *Credit Bancorp*, 194 FRD at 472 (I); *Camden Iron & Metal*, 138 FRD at 443 (II)

(B); *Lion Antique Cars & Investments*, 332 Ga. App. at 826. And to the extent that Medernix presented conflicting evidence on this question, "[t]he trial court is the trier of fact in discovery disputes and its finding will not be reversed where[, as here,] there is any evidence to support it." (Citation and punctuation omitted.) *Demere Marsh Assoc. v. Boatright Roofing & Gen. Contracting*, 343 Ga. App. 235, 247-248 (4) (808 SE2d 1) (2017).

7. Because the issue is likely to recur on remand, we also address Medernix's argument that information regarding the write-offs or adjustments to the bills of other patients is not discoverable because those amounts represent the settlement of medical debts. Even if we assume that write-offs or adjustments to bills of third-party patients can be construed as settlements of claims, settlement information is discoverable when shown to be relevant to anything that is or may become an issue in the litigation. See *Chandler v. Liberty Mut. Fire Ins. Co.*, 333 Ga. App. 595, 597-599 (1) (773 SE2d 876) (2015) (physical precedent only) (trial court abused its discretion in precluding discovery of insurance claim file that included settlement documents, where the information sought was relevant to questions raised in the litigation pertaining to the

exhaustion of insurance benefits and bad faith).[10] See also *Townhouse Restaurant of Oviedo v. NuCO2, LLC*, No. 19-14085-CIV, 2020 WL 4923732, at *4 (III) (C), 2020 U.S. Dist. LEXIS 155131, at *12 (III) (C) (S. D. Fla. June 24, 2020) (explaining that "the touchstone for whether settlement agreements must be disclosed is relevance"); *Silver Streak Trailer Co. v. Thor Indus.*, No. 18-14126-CIV, 2018 WL 8367073, at *6

---

[10] OCGA § 24-4-408, the evidentiary rule that addresses compromises and offers to compromise, provides:

> (a) Except as provided in Code Section 9-11-68, evidence of:
> > (1) Furnishing, offering, or promising to furnish; or
> > (2) Accepting, offering, or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount shall not be *admissible* to prove liability for or invalidity of any claim or its amount.
>
> (b) Evidence of conduct or statements made in compromise negotiations or mediation shall not be *admissible*.
>
> (c) This Code section shall not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations or mediation. This Code section shall not require exclusion of evidence offered for another purpose, including, but not limited to, proving bias or prejudice of a witness, negating a contention of undue delay or abuse of process, or proving an effort to obstruct a criminal investigation or prosecution.

(Emphasis supplied.) As the italicized statutory language reflects, OCGA § 24-4-408 addresses the admissibility of compromises and offers to compromise. But, as previously noted, the fact that evidence ultimately may be inadmissible does not preclude its discoverability. See *Ortho Sport & Spine Physicians*, 352 Ga. App. at 216-217 (2); *WellStar Kennestone Hosp.*, 344 Ga. App. at 377-378.

(B), 2018 U.S. Dist. LEXIS 226001, at *19 (B) (S. D. Fla. Nov. 15, 2018) (concluding that "litigants cannot shield settlement agreements from discovery solely based on confidentiality if the agreement is relevant to the action, or likely to lead to relevant evidence"). Compare *Mableton Parkway CVS v. Salter*, 254 Ga. App. 162, 164 (2) (561 SE2d 478) (2002) (concluding that trial court abused its discretion by compelling the production of certain settlement information, where the requesting party failed "to articulate how the information would be relevant to this case"). And, as discussed supra in Division 1, the amount that Ortho Sport charged, wrote-off, adjusted, or accepted as payment in full from other patients for the same types of treatment at the same medical facility during the same general time period as Ochoa may have some relevance to the reasonableness and necessity of the expenses for Ochoa's care. Medernix's argument regarding settlement information therefore is unpersuasive.

*Judgments vacated in part and cases remanded with direction in Case Nos. A24A1046 and A24A1047. Gobeil and Pipkin, JJ., concur.*