**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 24, 2026**

# In the Court of Appeals of Georgia

A26A0295. ORTHO SPORT & SPINE PHYSICIANS, LLC v. SNOWDEN et al.

RICKMAN, Presiding Judge.

This is the second appearance of this contentious discovery dispute before our Court.[1] Once again, non-party Ortho Sport & Spine Physicians, LLC ("Ortho Sport") challenges trial court orders requiring it to produce database reports and other

---

[1] The dispute arose in Glenda Ochoa's personal injury suit against John Ernest Snowden, New South Trucking, LLC, LAD Truck Lines, Inc., and Protective Insurance Company in the Superior Court of Oconee County for damages arising from an automobile accident. As part of her damages, Ochoa sought to recover her past and future medical expenses, and she relied on medical treatment and bills she received from different providers, including Ortho Sport & Spine Physicians, LLC, an orthopedic medical practice. *Medernix, LLC v. Snowden*, 372 Ga. App. 48, 48 (903 SE2d 728) (2024).

documents to the defendants. For the reasons set forth below, we vacate in part the trial court orders and remand for further proceedings consistent with this opinion.

In the prior appeal, non-parties Ortho Sport and Medernix, LLC, challenged the trial court's order compelling them to produce a database report and other documents to the defendants ("Production Order") and a related protective order ("Protective Order"). *Medernix, LLC v. Snowden*, 372 Ga. App. 48, 48 (903 SE2d 728) (2024). This Court concluded that the trial court had abused its discretion in requiring Ortho Sport and Medernix to create and produce a requested database report containing extensive financial and billing information because the report was overly broad and was not reasonably calculated to lead to the discovery of admissible evidence. Id.

We did, however, conclude that

the amount that Ortho Sport charged, wrote off, adjusted, or accepted as payment in full from other patients *for the same types of treatment at the same medical facility during the same general time period as [plaintiff Glenda] Ochoa* may have some relevance – "particularly in the broad discovery sense" – to the reasonableness and necessity of the charges for Ochoa's care and thus be discoverable.

Medernix, 372 Ga. App at 53-54(1). In addition, we recognized that "evidence that the plaintiff's counsel has a close relationship with and a history of making referrals to the plaintiff's treating physician can be relevant to show the bias of that physician" and determined that documents reasonably calculated to lead to financial information concerning a treating physician's bias would be discoverable. Id. at 54(1). We then vacated the Production Order and the Protective Order to the extent they required Ortho Sport to create and produce the requested database report and remanded for the trial court to determine whether a more limited report could be generated that would be consistent with our opinion, "subject to reasonable restrictions on the use and dissemination of any such report."[2] Id. at 56(1).

---

[2] The Production Order also compelled Ortho Sport to produce (1) communications between Ortho Sport, plaintiff's attorneys, and any litigation funding companies involved in the case, including communications logged into eClinicalWorks and/or Salesforce (another software database utilized by Ortho Sport); (2) all applicable contracts between Ortho Sport, plaintiff, plaintiff's attorneys, and any litigation funding companies involved in the case; (3) "HIPAA audit logs" reflecting who had accessed plaintiff's medical files and any changes made to those files; and (4) a database report revealing Ortho Sport/Medernix's billed charges or rates, as well as any adjustments made to those rates charges or rates, "categorized by associated law firm referral partner." In the prior appeal, Ortho Sport did not contest the portions of the Production Order that compelled it to produce those records and materials. *Medernix*, 372 Ga. App. at 56(1), n.8.

On remand, the trial court conducted a lengthy hearing to determine whether a report could be prepared that would be consistent with this Court's opinion in *Medernix*. During the April 2025 hearing, the trial court heard from Ortho Sport's revenue cycle management director, who oversees billing in the medical records department and has ten years of experience using the eClinicalWorks system, a medical billing and records software program utilized by Ortho Sport. Defendants' healthcare consultant, who had been using eClinicalWorks since 1999, also testified. The Ortho Sport employee initially testified that the manner in which Ortho Sport posted most of its payments would not be conducive to producing a report showing the amount that Ortho Sport charged, wrote off, adjusted, or accepted as payment in full from other patients for the same types of treatment at the same medical facility during the same general time period as Ochoa. Defendants' healthcare consultant testified that it is possible to run that information in eClinicalWorks but it would not be possible to do so in one report because of the manner in which Ortho Sport applies certain of its payments. Instead, it would require multiple reports and some compilation of that information. The healthcare consultant testified that she could explain in writing how to run the respective reports, and the trial court requested that

she do so, narrowing the scope as outlined in *Medernix*. After hearing from the consultant, Ortho Sport's employee agreed that it sounded possible to obtain the requested information through multiple reports, although she was not familiar with all of them, and that it would be helpful to her to have written instructions if she were asked to run the reports.

Counsel then debated the appropriate time period for the reports, with defendants seeking information spanning a period of three years from when Ochoa began treatment and Ortho Sport trying to limit the range to the actual dates of Ochoa's treatment. The trial court ultimately determined that the reports should cover an 18-month period, beginning with Ochoa's first treatment at Ortho Sport.

The trial court also requested that the defendants and Ortho Sport agree to a protective order to protect the information contained in the reports. Counsel for defendants responded, "we generally are agreeable to a broad protective order with two caveats. We just don't want to have to throw it away because we want to be able to show it to another judge if they ever take a position other than what is real."

Following the hearing, the trial court issued an order compelling Ortho Sport and Medernix to produce three eClinicalWorks reports based on certain search

criteria to the defendants ("Second Production Order"). The trial court included a requirement in the Second Production Order that defendants and their counsel hold the reports strictly confidential, subject to certain exceptions. As requested by the trial court, the healthcare consultant provided detailed instructions on how to run the eClinicalWorks reports with the applicable search criteria in the form of an affidavit with an attached exhibit containing guidance applicable to each report.

During the post-remand hearing, counsel for defendants also requested a show cause order requiring Ortho Sport and Medernix to produce previously requested records and materials that were not part of the eClinicalWorks reports. The trial court subsequently issued an order requiring Ortho Sport to produce numerous documents in addition to the eClinicalWorks reports ("Show Cause Order").

Ortho Sport's appeal challenging the Second Production Order and the Show Cause Order followed.[3]

1. Ortho Sport contends that the Second Production Order and the Show Cause Order disregard this Court's instructions in *Medernix*.

---

[3] Ortho Sport also challenges a show cause order directed to Medernix to the extent that it seeks to impose obligations on Ortho Sport. Medernix is not a party to this appeal.

With respect to the eClinicalWorks reports required under the Second Production Order, Ortho Sport argues that they are not properly limited to "patients [who received] the same types of treatment at the same medical facility during the same general time period as Ochoa." *Medernix*, 372 Ga. App. at 54(1) (emphasis omitted). Ortho Sport complains that they include patients who did not receive all of the same medical treatments/CPT[4] codes as Ochoa; they include patients who may have received one of the same diagnostic codes, low back pain or lumbar facet joint syndrome, but received different medical treatment; the time period improperly exceeds the time during which Ochoa was being treated; and the clinical locations are

---

[4] "CPT" code

> stands for Current Procedural Terminology codes. CPT codes are a national uniform coding structure created for use in billing and overseen by the American Medical Association. They are used by all health insurance companies and by Medicare and Medicaid. A code represents at least two things: the procedure or service performed and the level of complexity involved in it.

*Medernix*, 372 Ga. App. at 50, n.4.

tied to the practitioners who provided treatment to or oversaw the treatment of Ochoa instead of being limited to the locations where Ochoa was treated.[5]

During the post-remand hearing, the trial court and counsel for Ortho Sport and the defendants thoroughly examined the witnesses knowledgeable about the eClinicalWorks system in an effort to comply with the remand instructions in *Medernix*. As previously noted, adjustments to the original plan for obtaining the requested information were necessitated by certain aspects of Ortho Sport's billing system. Under the circumstances presented here and given the trial court's broad discretion in controlling discovery, the trial court did not violate this Court's opinion in *Medernix* in ordering Ortho Sport to produce the eClinicalWorks reports outlined in the Second Production Order. See *Johnson v. Adcock*, 377 Ga. App. 375, 381(2) (922 SE2d 668) (2025) ("Trial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion.") (punctuation omitted). See also *Gen. Motors v. Buchanan*, 313 Ga. 811, 814-15(2)(a)

---

[5] Ortho Sport also complains that one of the reports addresses payments made at the "global level," but as discussed at length during the post-remand hearing, multiple reports were necessitated by the way in which Ortho Sport posts certain of its payments.

(874 SE2d 52) (2022) ("[I]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.") (punctuation omitted).

Ortho Sport also complains that the Second Production Order improperly requires the identification of patient identification numbers and payor names. With respect to the patient identification numbers, the Second Production Order appears to be internally inconsistent. On the one hand, it incorporates the healthcare consultant's affidavit and instructions on how to generate the eClinicalWorks reports that are to be produced, and those instructions state that the patient account number should be redacted before delivery.[6] But the Second Production Order states that Ortho Sport may not redact the patient identification numbers for any of its patients whose information may be captured by the ordered search and production.

The record is also unclear with respect to the disclosure of payor names. One set of instructions attached to the healthcare consultant's affidavit uses payor name

---

[6] The instructions attached to the healthcare consultant's affidavit use account numbers as a way to identify individual patients. The record here does not indicate any distinction between patient identification numbers and account numbers — both are used to identify individual patients.

as one search criteria for the report, but for another report, the payor name is information that is to be redacted before delivery.

We need not consider the propriety of requiring the production of the patient identification/account numbers or payor names when it is not clear that such production was actually required. We therefore vacate the Second Production Order to the extent that it required Ortho Sport to reveal patient identification/account numbers for any of its patients, other than Ochoa, whose information may be captured by the ordered search and production or to reveal payor names. We remand for the trial court to clarify its ruling with respect to whether Ortho Sport may redact patient identification numbers and/or payor names from the reports ordered to be produced. See *Haney v. Camp*, 320 Ga. App. 111, 113(1) (739 SE2d 399) (2013) (remanding case for trial court to clarify inconsistent ruling).

2. Ortho Sport contends that the Second Production Order and the Show Cause Order require the production of information and documents that were never requested to be produced.

First, Ortho Sport challenges the required production of three eClinicalWorks reports instead of the one report mentioned in *Medernix* as having been requested by

defendants. But as explained above, Ortho Sport's billing system necessitated the production of three separate reports to obtain information that might have otherwise been available in one report.

Next, Ortho Sport challenges the Second Production Order to the extent it requires the disclosure of patient identification numbers for Ortho Sport patients other than Ochoa because they were not previously requested. As set forth in Division 1 of our opinion, it is unclear whether such disclosure was required, and that issue will be resolved on remand.

With respect to the Show Cause Order, Ortho Sport argues that the requirement that it potentially be required to conduct a "hand-review of emails or even the review of each of its files" to compile lists of the number of patients who meet certain criteria exceeds both any request made by defendants and its discovery obligations under OCGA § 9-11-34(a).[7]

---

[7] OCGA § 9-11-34(a)(1) provides in part:

(a) Scope. Any party may serve on any other party a request:

(1) To produce and permit the party making the request, or someone acting on his behalf, to inspect and copy any designated documents

Relying on *Blount v. Blount*, 373 Ga. App. 105, 110(4) (907 SE2d 719) (2024), Ortho Sport argues that defendants' request that it hand-review emails or files to create a list was improper because it was not included in defendants' discovery requests or motion to compel. In *Blount*, this Court reversed a trial court order granting a motion to compel production of documents to the extent that they were not previously sought in the motion to compel or requested in discovery. Id. But here, Ortho Sport is not challenging the information sought but the method of obtaining it, an issue not addressed in *Blount*.

With respect to Ortho Sport's obligations under OCGA § 9-11-34(a)(1), it argues that it cannot be required to hand review emails or files to create a document that does not already exist. In *Medernix*, this Court recognized that where a "requested document is data drawn from the producing party's electronic computer storage system, that party can be tasked with translating the document through detection devices into reasonably usable form." 372 Ga. App. at 57(3) (punctuation

(including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form)[.]

omitted). We also recognized the general rule that non-parties are not required to create documents that do not exist, simply for purposes of discovery. Id. Accordingly, we vacate the Show Cause Order's "hand-review" requirement to the extent that it seeks to impose on Ortho Sport a duty to create a document that does not exist, as opposed to extracting the information requested from an existing database or program, and remand for the trial court to clarify the scope of that requirement.

3. Ortho Sport contends that the Second Production Order violates the procedural and substantive due process rights of its patients, other than Ochoa, because it requires the production of patient identification numbers. Ortho Sport concedes that this issue was not raised in the trial court but argues that it could not have raised it below because defendants had previously agreed that Ortho Sport could redact that information.[8]

---

[8] As a general rule, "issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken." *Rodriguez v. State Farm Mut. Auto. Ins. Co.*, 366 Ga. App. 65, 70 (880 SE2d 606) (2022).

As set forth in Division 1 of our opinion, it is unclear whether disclosure of patient identification numbers was required, and that issue will be resolved on remand. Accordingly, we need not consider this enumerated error.

*Judgment affirmed in part and vacated in part, and case remanded. Brown, C. J., and Mercier, J., concur.*